Henry Noodie HILL, Jr., Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 682S226.

Supreme Court of Indiana.

Dec. 16, 1982.

Nick J. Anast, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianpolis, for appellee.

HUNTER, Justice.

The defendant, Henry Noodie Hill, Jr., was convicted by a jury of robbery, a Class B felony. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for a period of fifteen years. In this belated direct appeal, he presents the following issues for our review:

1. Whether the trial court erred when it denied defendant's motion to suppress an in-court identification;

2. Whether defendant was denied the effective assistance of counsel; and

3. Whether the evidence was sufficient to sustain the conviction. The record reveals that on June 2, 1980, two men robbed the Indiana Bell Telephone office located at 422 Fayette Street in Hammond, Indiana. The subsequent police investigation culminated in defendant's conviction for the crime.

I.

Hammond Police Officers Raymond Myszak and Oscar Ramirez were summoned to the scene of the robbery immediately after it occurred. There, employees and clientele of Indiana Bell who had witnessed the robbery provided the police officers with descriptions of the perpetrators; in turn, the descriptions were dispatched via radio to patrol cars in the City of Hammond. Approximately one-half hour later, Police Officer Thomas Fielden, who was on patrol in the south Hammond area, observed the defendant cross the street in front of him. Because the defendant matched the description of one of the men who had robbed the telephone company office, Fielden gave chase to defendant, who had broken into a run when he had noticed the officer's presence. Defendant was apprehended after a lengthy chase through Hammond neighborhoods; once apprehended, he was returned to the scene of the crime. There, three employees of Indiana Bell who had witnessed the robbery—Priscilla Askew, Renee Rusin, and Nancy Breskovich—were taken outside the office where each identified defendant as one of the men who had participated in the robbery an hour earlier.

Prior to trial, defendant filed a motion to suppress any testimony regarding the "show-up" identification of defendant by the complaining witness, Priscilla Askew. Concomitantly, defendant's motion was designed to preclude any in-court identification by the complaining witness on the basis that it would be the product of the unnecessarily suggestive pretrial identification. Following a hearing on the motion, the trial court ruled that any testimony concerning the pretrial identification testimony of witness Askew should be suppressed. The court also ruled, however, that notwithstanding the inadmissibility of evidence regarding the show-up identification, an independent basis existed for an in-court identification of defendant by Askew.

Defendant maintains the trial court erred when it permitted Askew to make an in-court identification of him. He concedes that notwithstanding the fact that an unnecessarily suggestive pretrial confrontation has occurred, a witness may still be permitted to make an in-court identification if the state produces clear and convincing evidence that an independent basis for the identification exists. *Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Remsen v. State,* (1981) Ind. 428 N.E.2d 241; *Swope v. State,* (1975) 263 Ind. 148, 325 N.E.2d 193. The question whether an independent basis exists is resolved by examining the totality of the circumstances surrounding the opportunity of the witness to observe the perpetrator at the scene of the crime, as well as the facts regarding the suggestive confrontation. *Remsen v. State, supra; Love v. State,* (1977) 266 Ind. 577, 365 N.E.2d 771; *Jones v. State,* (1975) 263 Ind. 555, 334 N.E.2d 689. If an independent basis exists to the extent that the suggestiveness in the improper confrontation could

be resisted by the witness, an in-court identification is proper. *Neil v. Biggers, supra; Simmons v. United States,* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Love v. State, supra.*

The record reveals that the robbery occurred during the daylight hours (1:00 p.m.) and that the interior of the Indiana Bell office was illuminated by fluorescent lighting. Askew testified that the robbery lasted approximately fifteen minutes; her estimate was corroborated by other witnesses. Askew stated that throughout the fifteen minute period, she had an unobstructed view of both perpetrators. During the robbery, the man she identified as defendant occupied a position roughly thirty feet from her, where he stood guard at the door with a gun. Immediately following the robbery, she described him to police as a "very heavy" black male, approximately 250 pounds in weight and about 5'5" in height. She also indicated that the man had worn dark colored trousers, a blue banlon sweater, and had wrapped a yellow bandanna about the lower half of his face. At trial, she reiterated—without dissimilarities—her description of the physical attributes of the perpetrator whom she identified as defendant.

■ The show-up confrontation, on the other hand, was not rife with circumstances which would establish it as conducive to a substantial likelihood of irreparable misidentification. This Court, of course, has recognized that inherently, one-on-one confrontations are very suggestive. *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509; *Cooper v. State,* (1977) 265 Ind. 700, 359 N.E.2d 532. Confrontations *immediately after the crime,* however, are not *per se* improper, for it is valuable to have the witness view a suspect while the image of the perpetrator is fresh in the witness's mind; indeed, the immediacy of the incident substantially diminishes the potential for misidentification. *Whitlock v. State,* (1981) Ind. 426 N.E.2d 1292; *Rogers v. State,* (1979) Ind. 396 N.E.2d 348; *Hampton v. State,* (1977) 172 Ind.App. 55, 359 N.E.2d 276. Given that purpose, defendant was

transported to the scene of the crime in a squad car. There, Officer Myszak summoned witnesses from the office, informing them only that "we had somebody for them to look at." Witness Askew then approached the squad car and looked in at defendant; without hesitation or equivocation, she identified him as the perpetrator who had stood near the office entrance during the robbery.

■ To a certain extent, an aura of criminality may have been injected into the show-up confrontation by virtue of defendant's presence in the squad car. *See generally, Dillard v. State,* (1971) 257 Ind. 282, 274 N.E.2d 387; *Cook v. State,* (1980) Ind. App. 403 N.E.2d 860. That fact does not establish itself as the predominant and overriding basis for the in-court identification in light of the extensive length of time and excellent lighting conditions in which Askew had to observe the perpetrator. Coupled with the perpetrator's distinctive height and weight characteristics, the conditions surrounding Askew's opportunity to observe him during the robbery support the conclusion that an independent basis for her in-court identification did exist. *Remsen v. State, supra; Whitlock v. State, supra; Poindexter v. State, supra.* The trial court did not err in permitting Askew to identify defendant in court. *Id.*

In his brief, defendant has also argued that the in-court identifications of defendant by Renee Rusin and Nancy Breskovich were improperly admitted. He again asserts that their in-court identifications were the product of the show-up confrontation which occurred immediately after the crime.

■ The record reveals, however, that neither the show-up identifications or potential in-court identifications by Rusin and Breskovich were the subject of defendant's motion to suppress. Nor did defendant object at trial when their in-court identifications were solicited. Any error consequently has been waived. *Stowers v. State,* (1977) 266 Ind. 403, 363 N.E.2d 978. We note, however, that the opportunity for Rusin and Breskovich to view the perpetrators

was virtually identical to Askew's circumstances. There was no error here.

## II.

■ Defendant next asserts he was denied the constitutional guarantee of effective assistance of counsel at the trial court level of these proceedings. It is well settled that when confronted with a claim of ineffective assistance of counsel, this Court examines the totality of the circumstances to determine whether the representation afforded the defendant constituted a "mockery of justice," as modified by the requirement that the counsel provided amounted to adequate legal representation. *Tessely v. State,* (1982) Ind. 432 N.E.2d 1374; *Cottingham v. State,* (1978) 269 Ind. 261, 379 N.E.2d 984. Each case must be judged according to its own facts; a constant principle, however, is that a presumption exists that the representation afforded was adequate. Strong and convincing evidence is required to overcome the presumption. *Tessely v. State, supra; Lindley v. State,* (1981) Ind. 426 N.E.2d 398; *Rinard v. State,* (1979) Ind. 394 N.E.2d 160.

Defendant's primary basis for his claim of ineffective counsel concerns a technical miscue of his attorney during cross-examination of witness Priscilla Askew. In an attempt to impeach Askew with respect to her description of the perpetrators, defendant's attorney read from the police report compiled immediately after the robbery. The report included a reference to the show-up confrontation between Askew and defendant. After defense counsel read the reference to the confrontation, the state asserted that, notwithstanding the suppression ruling regarding the confrontation, the door had been opened for evidence regarding the show-up and identification therefrom. Defense counsel candidly conceded his error; at the same time, the state indicated that even if the reference to the confrontation had not been read, it would have attempted to gain admission of the show-up evidence on the basis that the remainder of the police report was admissible to complement that portion already read in court. The court ruled that evidence of the show-up confrontation and Askew's identification therefrom was admissible.

■ Defendant maintains that his attorney erred in two respects: (1) reading the police statement, and (2) failing to argue that the door was not opened for admission of evidence regarding the pretrial confrontation. Obviously, defense counsel's use of the police report reflected his trial strategy to impeach the credibility of the state's witness by detailing inconsistencies in her pretrial and in-court statements. His inadvertent reading of the reference to the show-up confrontation, albeit a mistake, does not *ipso facto* render his representation inadequate; neither poor strategy, an isolated mistake, carelessness, nor inexperience necessarily establish that inadequate counsel was provided. *Baker v. State,* (1980) Ind. 403 N.E.2d 1069; *Blackburn v. State,* (1973) 260 Ind. 5, 291 N.E.2d 686. Contrary to defendant's assertion, defense counsel did not compound the mistake by failing to argue that the door had not been opened for evidence of the show-up identification; that assertion would be arguable had the reference to the confrontation not been read, for the show-up and identification therefrom were the subject of the suppression order. As it was, however, the evidence of the confrontation was admissible upon redirect examination to explain a matter raised by defendant. *Layton v. State,* (1973) 261 Ind. 251, 301 N.E.2d 633. Furthermore, in order to establish the inadequacy of counsel by reason of a failure to object, it must be shown that had the proper objection and argument been made, the trial court would have been required to sustain it. *Beard v. State,* (1981) Ind. 428 N.E.2d 772. That is not the case here.

■ Defendant attributes significant import to his counsel's mistake in reading the reference to the show-up confrontation; he argues that "The State then went on to emphasize with Priscilla Askew, Renee Rusin and Nancy Breskovich that Henry Noodie Hill, Jr. had been positively identified by these women immediately after the robbery . . . ." Inasmuch as the pretrial

and in-court identifications of Rusin and Breskovich were not the subject of defendant's motion to suppress, the state gained no advantage insofar as the testimony of Rusin and Breskovich was concerned. Their pretrial and in-court identifications of defendant were admissible regardless of defense counsel's miscue, as was Askew's in-court identification. In light of these various identifications which were admissible independent of counsel's inadvertent reference, it cannot be said the isolated mistake of defense counsel alone rendered the proceedings a mockery of justice or shocking to the conscience. *Hendrix v. State,* (1981) Ind. 418 N.E.2d 1161; *Huggins v. State,* (1980) Ind. 403 N.E.2d 332.

■ Defendant asserts, however, that the effect of the miscue was exacerbated by other deficiencies in his representation. He maintains that the inadequacy of his representation is also reflected in the fact that his attorney did not cross-examine either Rusin or Breskovich; he argues that the two witnesses should have been cross-examined regarding "their ability to observe the robbers, their previous descriptions, and the sureness of their identifications." The record reveals that Rusin and Breskovich shared virtually the same opportunity to view the perpetrators as Askew, who was cross-examined by counsel. Due to the nature of that opportunity—fifteen minutes in well-lighted surroundings—defendant's trial attorney may have concluded that cross-examination of Rusin and Breskovich would only emphasize evidence favorable to the state. The same is true of their previous descriptions and identifications. Police officers indicated the witnesses' descriptions were generally uniform; the record indicates that both Rusin and Breskovich's identifications of defendant were unequivocal. Cross-examination of the two witnesses regarding these matters was very likely foresaken on the basis that it would be detrimental to defendant's case to dwell on them. In the circumstances present here we cannot second-guess defense counsel's lack of cross-examination, for it involved a tactical matter of trial strategy subject to the attorney's deliberate choice. *Weaver v. State,* (1982) Ind. 432 N.E.2d 5; *Morris v. State,* (1980) Ind. 409 N.E.2d 608; *Roberts v. State,* (1981) Ind.App., 419 N.E.2d 803.

■ A similar conclusion must be reached with respect to defendant's contention that his attorney should have cross-examined state's witness Michael Novak. On direct examination, Novak testified that shortly after the time of the robbery, an automobile accident occurred near his place of employment. At the scene, he observed a "black male, about 5'10", maybe 18 to 22 years old, wearing dark clothes . . . ." According to Novak the man, whom he described as "heavy set, maybe 240, 250 pounds," backed away from the wrecked automobile with a "handful" of money and "walked off through the crowd pretty quickly." Novak never expressly identified the man as defendant.

Defendant argues that his attorney should have cross-examined Novak to eliminate the inference that the man fleeing the accident scene was defendant. Cross-examination, however, might only have served to buttress that inference or transform it to a positive statement of fact. The physical characteristics Novak attributed to the man paralleled those provided to the police by witnesses to the robbery; furthermore, Police Officer Thomas Fielden's initial observation of defendant occurred in the vicinity of the automobile accident. The ensuing chase, which occurred on foot, led to defendant's apprehension. In light of these circumstances, defense counsel may have concluded that cross-examination would only serve to buttress the state's case by reaffirming the similarities between Novak's description and those attributed to the perpetrator who had stood guard at Indiana Bell. Again, the matter was one of strategy and trial tactics, a question we will not second-guess. *Weaver v. State, supra; Morris v. State, supra; Roberts v. State, supra.*

Inasmuch as defendant has not established that his attorney committed any error to compound the isolated mistake he conceded at trial, there is no merit to his

contention that the cumulative effect of his counsel's deficiencies rendered his representation constitutionally inadequate. Based on the totality of the circumstances present here, defendant's representation did not render the proceedings a mockery of justice or fall below the standard of adequate legal representation. Defendant is not entitled to relief on this basis. *Weaver v. State, supra; Hendrix v. State, supra.*

### III.

Defendant maintains the evidence was insufficient to sustain his conviction for robbery. He argues that the evidence was insufficient to establish his identity as one of the perpetrators.

■ When confronted with a challenge to the sufficiency of the evidence, this Court neither weighs the evidence nor judges the credibility of the witnesses. Rather, we examine only the evidence most favorable to the state, together with the reasonable inferences which can be drawn therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion that defendant is guilty beyond a reasonable doubt, the verdict will not be disturbed. *Remsen v. State, supra.*

■ Here, the record reveals that Askew, Rusin, and Breskovich each made unequivocal in-court identifications of defendant as one of the two perpetrators of the robbery. Each of the three witnesses also made pretrial identifications of defendant. This evidence is sufficient to support the conclusion that defendant participated in the robbery for which he was convicted. *Remsen v. State, supra; Whitlock v. State, supra; Landrum v. State,* (1981) Ind. 428 N.E.2d 1228.

For all the foregoing reasons, there was no trial court error and its judgment should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.