**Samuel GRAY, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 49S00–8812–CR–960.**

Supreme Court of Indiana.

Nov. 28, 1990.

Rehearing Denied Feb. 13, 1991.

Richard D. Gilroy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Robbery, a Class A felony, and he was found to be a habitual offender. He was sentenced to a term of fifty (50) years enhanced by thirty (30) years, for a total of eighty (80) years.

The facts are: On November 2, 1987, 80–year–old Mary Miles, the victim, left her residence in Broad Ripple and walked to a dentist's office. While she was walking, a black male wearing a tan jacket and riding' a blue bicycle grabbed her purse. As he grabbed her purse, she fell to the street and suffered a fractured vertebrae.

This incident was observed by Thomas Pelton, who was in his car, and he followed the perpetrator. In addition, Elizabeth Kaplan and Darryl McClelland were working in an office building when they heard the sound of tires skidding. Both looked out the window, saw a lady lying in the street and a black male riding away on a bicycle with a purse in his hand. The victim told Kaplan that a person riding a bicycle stole her purse. Subsequently, police were called and Officer James Fitzpatrick arrived at the scene to take a description of the perpetrator. He then transmitted the information to the police department for broadcast.

After the incident, David Dickson and Thomas Krier were in their backyards in Broad Ripple and noticed a black male behind a house looking through a purse. Krier approached the man and asked him what he was doing; he threw the purse on the ground and fled. Krier then telephoned the police.

Officer William Armor was patrolling in that neighborhood and noticed a person matching the description in the robbery dispatch. He arrested the suspect. Soon thereafter Krier and Thomas Pelton were taken to where the suspect was being detained, and they identified him. In addition, Elizabeth Kaplan and Darryl McClelland were brought to the scene and identified appellant as the person who stole the victim's purse.

Appellant contends the trial court erred in denying his motion to suppress the identification of witnesses against him. He contends that the show-up held by the police shortly after the crime and apprehension was illegally suggestive.

Appellant argues that the show-up was suggestive in that he was in handcuffs,

was the only black person at the scene not wearing a police uniform, and was identified at a location different from where the robbery occurred.

This Court has repeatedly held that while one-on-one confrontations are inherently suggestive, such confrontations are not *per se* improper. *Hill v. State* (1982), Ind., 442 N.E.2d 1049. In *Hill* this Court stated:

"Confrontations *immediately after the crime*, however, are not *per se* improper, for it is valuable to have the witness view a suspect while the image of the perpetrator is fresh in the witness's mind; indeed, the immediacy of the incident substantially diminishes the potential for misidentification." *Id.* at 1052.

This Court recently addressed the identification procedure in *Wethington v. State* (1990), Ind., 560 N.E.2d 496. In *Wethington*, we stated:

"This Court must determine whether 'the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification' that appellant was denied due process of law under the Fourteenth Amendment. *Dillard v. State* (1971), 257 Ind. 282, 286, 274 N.E.2d 387, 389 (quoting *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967))." *Id.* at 501.

■ This Court, in *Craig v. State* (1987), Ind., 515 N.E.2d 862, listed a number of factors to be examined to determine whether a particular show-up is unduly suggestive. The factors the court will consider include the length of initial observation of the defendant by the person identifying him, lighting conditions, distance between the witness and defendant, the witness' capacity for observation and his level of certainty, discrepancies between the witness' initial and actual description, and any identifications of another person. *Id.* at 864.

In the instant case, each witness who testified gave an accurate and detailed description of the suspect and had adequate time to observe him. In addition, the show-up identification occurred within fifteen to thirty minutes of the robbery at which time

the witnesses identified appellant as the perpetrator. The incident happened at approximately 11:00 a.m. and the weather was clear and sunny. Each witness was able to observe the suspect at close range and there were no discrepancies in their description of the suspect.

With regard to appellant's contention that the police apprehended him at a location other than the scene of the crime, this Court in *Lyons v. State* (1987), Ind., 506 N.E.2d 813 approved of a show-up which took place at a location different from where the robbery occurred and where the defendant was the only black male present. *See also Dishman v. State* (1988), Ind., 525 N.E.2d 284. Appellant also contends that being in handcuffs at the time of the identification was unduly suggestive. In *Moore v. State* (1988), Ind., 518 N.E.2d 1093, this Court ruled that an identification of a robbery suspect by the victims at the scene of the robbery immediately after the robbery was not impermissibly suggestive even though the defendant was in handcuffs. We find the trial court did not err in denying the motion to suppress.

■ Appellant contends the trial court erred in denying his motion contesting the charging procedure used by the prosecutor's office in filing an information with an attached probable cause affidavit. He claims the State was required to have probable cause determined before the information was filed. He cites *Hurtado v. California* (1884), 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232. Appellant misconstrues *Hurtado*. A probable cause hearing is necessary before prosecution not before the charge. *Gerstein v. Pugh* (1975), 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54. Appellant, *pro se*, filed a motion to dismiss claiming that a neutral and detached magistrate did not make a probable cause determination. The trial court denied the motion.

Appellant's argument is that the trial court erred by failing to make a probable cause determination as required by Ind. Code §§ 35–33–2–1(b) or 35–33–7–2. Appellant's position is not supported by the record. In fact, the trial court found probable cause. The court stated:

"Affidavit for probable cause filed as follows; which reads as the following: State by Stephen Goldsmith Prosecuting Attorney files information and files State's petition for no bond as follows: which reads as the following: In the Marion County Superior Court, Criminal Division, Room # 3 under cause number Cr87–291C probable cause found to order CAPIAS issued on Defendant Gray for the crimes charged, Robbery, Class A Felony, Bond set in the sum of No bond for 15 days."

The record also discloses:

"Comes now the Court, by the Judge thereof, and hearing have been held on the issue of probable cause, and the Judge having examined the affidavits herein pertaining to the existence of probable cause for the issuance of a Capias now finds that probable cause exists for the issuance of a Capias (warrant for arrest) in this cause, and orders Clerk to issue Capias and to set bond in accordance with the bond schedule duly adopted by the Court."

The record further reveals that during the hearing on the motion to dismiss, the trial court stated:

"As to the impartial and neutral board, when the Affidavit for Probable Cause was submitted to this Court on November 4, 1987, I read the Information. I read the Probable Cause Affidavit, and ordered a Capias to be issued. I don't know Mr. Gray. I was that neutral magistrate to whom this case was submitted. It could have been the Master Commissioner; but it just happened to be me that day."

We find appellant's contention to be without merit.

■ Appellant contends the trial court erred in denying his request for a lineup. Appellant contends the lineup would be the only means to give him a fair trial after the pretrial identification procedures used in the instant case. If there was a likelihood of misidentification because of the pretrial identification procedures used, the court should grant a lineup.

Appellant claims the witnesses who chased him through the streets often lost sight of him and misidentification resulted. The trial court however denied his motion.

The granting of a lineup at the defendant's request, like other discovery matters in a criminal case, is largely a matter within the discretion of the trial court. *Glover v. State* (1982), Ind., 441 N.E.2d 1360. In *Morris v. State* (1984), Ind., 471 N.E.2d 288, this Court was confronted with a similar issue. In *Morris*, this Court stated:

"We find considerations having relevance to the equities of such petitions to be their proximity in time to the alleged offense and the trial, any changed appearance of the accused, the likelihood of misidentification, and the cost of conducting a lineup in all reasonable terms. They should not be granted routinely or in a perfunctory manner." *Id.* at 290.

We hardly can say from the evidence presented that the trial court erred in denying appellant's motion. We find no error.

■ Appellant contends the trial court erred in overruling his motion for a mistrial after a juror was removed during the trial and replaced with an alternate.

Prior to final argument, juror Dorothy Kelley advised the trial judge that she had seen State's witness, Officer William Armor, and defense witness, Danielle Darby, in the restaurant she manages. In addition, she indicated that she may have worked with appellant's sister at the restaurant. Although she testified she thought she could reach a fair and impartial verdict, she asked to be excused. Defense counsel asked the trial judge that the juror remain on the panel because he believed the juror merely recognized the witnesses as people who came into the restaurant. The State indicated in their argument that they would have peremptorily challenged the juror had they known the evidence. The trial judge excused juror Kelley and replaced her with an alternate juror, Mr. Shonk. Thereafter, counsel moved for a mistrial which was denied. The trial judge then instructed the jurors as follows:

"Obviously you will note Mr. Shonk is now seated as #6 as Ms. Kelley informed us that she knows not one but two of the witnesses who testified and she requested that she be allowed not to sit on the jury. Mr. Shonk had been advised that alternate jurors listen to the evidence just as though they would deliberate. You are aware of the fact that the fact that Mrs. Kelley has been excused has no bearing on any of the evidence in the case at all. You are to base your verdict strictly on the evidence that came in from the witness stand and the fact that she has been excused is completely irrelevant to any of the issues in this case."

Under Ind. Trial Rule 47(B), the trial court has discretion to remove a juror who "become[s] or [is] found to be unable or disqualified to perform [her] duties." *Dixon v. State* (1988), Ind., 524 N.E.2d 2, 4. Recently, this Court in *King v. State* (1987), Ind., 508 N.E.2d 1259 stated that the substitution of a regular juror with an alternate juror does not support a claim of prejudice.

In the instant case the trial court did not abuse its discretion by substituting the alternate juror for Kelley. We find no error.

Appellant finally contends the evidence is insufficient to sustain his conviction for robbery as well as the habitual offender determination.

In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Butler v. State* (1989), Ind., 547 N.E.2d 270.

■ As to appellant's claim involving the robbery conviction, he contends the conviction cannot be sustained due to unreliable identification evidence and that the victim could not identify him. In addition, he contends that evidence presented on his own behalf was ignored by the jury. In effect, appellant is asking this Court to reweigh the evidence; this we will not do.

The record reveals that the victim did not identify appellant due to the circumstances surrounding the crime. The victim's testimony was not necessary to convict him. Instead, the fact that the crime was observed by several witnesses, who each identified appellant and testified at trial that appellant was the perpetrator, supports the verdict. We find his claim to be without merit.

■ Appellant contends the habitual offender determination is insufficient because the State did not prove the dates of the conviction and sentencing for the two underlying felonies. To support a habitual offender charge, the State must show that the defendant had been convicted twice and sentenced twice for felonies, that the commission of the second offense was subsequent to having been sentenced upon the first, and the offense upon which the charge is based was subsequent to his second conviction. *Clark v. State* (1985), Ind., 480 N.E.2d 555.

The State placed into evidence Exhibits Nos. 12, 13, and 20 which disclosed that appellant violated the Offense Against Property Act, Ind.Code § 35–17–5–3(a), on May 15, 1977, was charged on June 23, 1977, and was sentenced on February 21, 1978 following a plea of guilty. The State also presented Exhibits Nos. 14 and 15 showing that appellant committed robbery on August 26, 1979, was charged on September 12, 1979, and was sentenced on April 10, 1986 after entering a plea of guilty. From the record it is clear that there is sufficient evidence to sustain the habitual offender determination.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.