## GEORGE DILLARD v.. STATE OF INDIANA.

[No. 170S6. Filed October 26, 1971.]

*George A. Purvis,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Lon D. Showley,* Deputy Attorney General, for appellee.

DeBRULER, J.—This is an appeal from a conviction for robbery in a trial by jury in Marion County Criminal Court, No. 1, and appellant was sentenced to ten to twenty-five years in prison.

## A.

Appellant's first allegation is that the trial court erred in refusing to strike the testimony of George Richey concerning his identification of appellant at a pre-trial, police conducted confrontation between appellant and the witness. On February 8, 1968, Richey was the assistant manager of a Standard Grocery Store at 2131 N. Central in Indianapolis. At approximately 9:30 p.m. on that date Rose Flanagan, a cashier, was in the store office counting receipts when a Negro man climbed over the partition wall and fell into the office. He had a stocking mask pushed up onto his forehead and carried a sawed-off shotgun. He took the money available and asked the witness to open the safe. She replied that she could not but she called George Richey to do it. When Richey entered the office the robber placed the gun against Richey's stomach and demanded the safe be opened. Before the safe could be opened the accomplice outside the office persuaded the robber inside to leave because they had been there too long. Within twenty minutes a police squad car came to the grocery store parking lot with a lone Negro man in the car. Richey testified that a police officer asked Richey if he could identify the man as one of the robbers. After the man got out of the car Richey positively identified him as the robber by his looks and also by his voice.

Appellant argues that Richey's trail testimony concerning that identification in the parking lot should have been stricken because the identification violated appellant's constitutional rights. In *U. S.* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert* v. *Cali-*

*fornia* (1967), 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, the United States Supreme Court held that a police conducted pre-trial confrontation between a witness and a suspect is a critical stage in the criminal proceeding and hence that the suspect has a right under the Sixth Amendment to the United States Constitution to be represented by counsel at that confrontation. However, this Court has held that an on-the-scene confrontation between a witness and a suspect conducted within a reasonably short time after the commission of the crime for the purpose of determining whether the witness can identify the suspect is not within the scope of the *Wade-Gilbert* rule. *Parker* v. *State* (1970), 254 Ind. 593, 261 N. E. 2d 562; *McPhearson* v. *State* (1970), 253 Ind. 254, 253 N. E. 2d 226; *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358.

Appellant concedes this but argues the identification was invalid under the rule of *Stovall* v. *Denno* (1967), 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, which applies to those cases not covered by the *Wade* rule, both pre-*Wade* and non-*Wade* cases. The test in *Stovall* is, looking at the totality of the circumstances, whether "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification" that he was denied due process of law under the Fourteenth Amendment. 388 U. S. at 302, 87 S. Ct. at 1972.

We believe the *Stovall* test focuses attention on two different sets of facts: (1) The facts bearing on whether the confrontation was conducted in such a fashion as to lead the witness to make a mistaken identification, *e.g.*, how the police asked the witness to attempt the identification, what the witness thought he was doing, the displayed attitude of the police towards the suspect, etc. (2) The facts bearing on how good a chance the witness had to observe the perpetrator of the crime such that any suggestiveness in the conduct of the confrontation could be resisted by the witness and he could make an accurate decision as to whether the man presented was the man who committed the crime. These would

include the length of time the witness was in the presence of the perpetrator, the distance of the witness from him, the lighting conditions at the time, capacity for observation by the witness, opportunity to observe particular characteristics of the criminal, etc. *See Parker* v. *State, supra.*

The appellant sets out ten factors to support his charge of unreliability of the identification: 1. "Absence of counsel"; 2. "Defendant returned in police car"; 3. "Defendant only person in police car"; 4. "Witness Richey surrounded by five or six officers in uniform"; 5. "Defendant made to get out of police car"; 6. "Defendant had blood on his face"; 7. "Defendant was handcuffed"; 8. "Defendant was not shown to Rose Flanagan nor apparently to any customers"; 9. "A shotgun was also returned to the store and identified by George Richey"; 10. "A sum of money was brought back to the store, counted in front of the manager, George Richey".

Points one through five are usual elements in any police conducted on-the-scene confrontation and to the extent they are suggestive they are not unnecesarily so. This Court determined they did not render an identification unconstitutional when it originally sanctioned such confrontations in *McPhearson* v. *State, supra,* and *Lewis* v. *State, supra.* Appellant argues that six, seven, nine and ten suggested to the witness that the police had recovered the stolen money, found the weapon used, and captured the robber after subduing him. The fact that appellant was bloodied and in handcuffs might tend to suggest that the police thought appellant was the robber and the police should be careful to eliminate such unnecessary conditions in conducting a confrontation because they could be decisive in a case where the support for the identification was weaker than in this case. It is also argued that the police should not have shown the witness the money or the gun until after he had viewed the appellant and made up his mind on the identification. However, there is nothing offered by appellant to show that this is not exactly what happened. The fact that appellant was not presented to other

witnesses for identification at that time does not detract from the solidity of Richey's identification.

The evidence in support of the reliability of Richey's identification was strong. Richey testified that the police officers made no suggestive remarks but simply asked him if he could identify this man as the robber. Richey was positive in his identification based on appellant's face, build, clothes and voice. Richey had been face to face with the unmasked robber in the store office for approximately ten minutes and had ample time to look at his face, clothes and build and hear his voice. Under these circumstances we do not believe appellant was denied due process of law within the meaning of *Stovall* v. *Deno, supra.*

## B.

Appellant's next allegation is that the trial court erred in refusing to give appellant's tendered instructions No. 5 and No. 7 relating to appellant's insanity defense.

A trial court refusal to grant tendered instructions will be reversed only if, considering the evidence in the case, the substance of the instruction was required to be given and was not adequately covered by other instructions actually given by the trial court. *Maxey* v. *State* (1969), 251 Ind. 645, 244 N. E. 2d 650. In this case there was an insanity defense and the trial court, without objection from the appellant, instructed on the *M'Naghten* and irresistible impulse rules as required by Indiana law at that time. Appellant's sole argument is that the trial court was required to give his two tendered instructions because they embodied the new insanity rule adopted by *Hill* v. *State* (1969), 252 Ind. 601, 251 N. E. 2d 429, which rule reads as follows:

"A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

"As used in this Article, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct." American Law Institute, Model Penal Code (Final Draft, 1962)

In *Hill*, as in this case, the appellant did not object to the trial court instruction on *M'Naghten* and irresistible impulse, but claimed the trial court erred in not giving one of his tendered instructions. We affirmed the trial court instruction on the *M'Naghten* rule and irresistible impulse because they were unobjected to in the trial court and adequately set out the Indiana law on the subject. That is also true in this case.

Appellant relies on that portion of the *Hill* opinion where the Court adopted the modified A. L. I. insanity rule for use in Indiana:

"It appears that a rule on criminal insanity, expansible and flexible in concept, is necessary and should be advocated. The ALI rule is such a rule and is an attempt to provide a framework under which the jury will be afforded a complete picture of the defendant's state of mind . . . the ALI rule *is not substantively a new rule but,* by its recognition of both the cognitive and volitional elements, is *rather an evolutionary restatement of existing law.*

\* \* \*

"We are of the opinion therefore that the modified ALI rule, *Freeman,* supra, is the rule that would better aid the courts of Indiana in arriving at truth and justice when considering defense pleas of insanity.

"Here however, appellant made no objection to the court's instructions on the *M'Naghten* and *irresistible* impulse rules and merely objected to the trial court's refusal to give his tendered instruction. . .

\* \* \*

"The case law in *Indiana* embracing as it does the *M'Naghten* and *irresistible* impulse rules has evolved as a result of the common law application of erstwhile accepted psychiatric concepts and are therefore subject to reevaluation and change from time to time by this court as deemed necessary to contemporize the rule with current psychiatric knowledge. Although we can not properly apply the ALI rule in this case, for to do so would overrule the well estab-

lished and long standing procedure for preserving questions relating to instructions, we do however believe it to be incumbent upon this court, at this time, to point out the superior nature of the ALI rule." (Original emphasis.) 252 Ind. at 616-618.

The *Hill* rule, since it is not a new substantive rule but merely an "evolutionary restatement of existing law," was intended to have only prospective application to trials begun after the date *Hill* was decided. *Hill* was decided on October 9, 1969, almost five months after the trial in this case and, therefore, *Hill* is not applicable.

## C.

Appellant's next contention is that the trial court erred in not granting appellant's pre-trial motion to discover "a copy of any and all inter-office memo, notes, reports, of all the law enforcement agencies of Marion County and state police of Indiana, of and concerning the robberies, the investigation of defendant herein and any and all persons suspected, interrogated and detained in conection therewith."

The principles to be applied by a trial court in determining whether to grant discovery to a criminal defendant were set down in *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, as follows:

"It is self-evident that a list of witnesses would have been beneficial in the preparation of apellant's case. We do not require that the State lay bare its case in advance of trial nor that the criminal defendant be allowed a fishing expedition, however these objections do not arise when a list of witnesses is requested and *the State fails to show a paramount interest in non-disclosure.*" (Emphasis added.) 248 Ind. at 692.

This principle has been used to uphold the defendant's right to discovery of witnesses lists, *Bernard* v. *State, supra; Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60; the right to depose witnesses, *Amaro* v. *State* (1968), 251 Ind. 88, 239

N. E. 2d 394; *Howard* v. *State* (1969), 251 Ind. 584, 244 N. E. 2d 127; the right to obtain evidence concerning the defendant's pre-trial confession, *Nuckles* v. *State* (1969), 250 Ind. 399, 236 N. E. 2d 818; during the course of the trial it has been to uphold a defendant's right to obtain statements of witnesses made prior to trial to the grand jury or the police, *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873.

The above quotation from *Bernard* touches on all three of the major questions to be asked by the trial court in determining the right of the criminal defendant to obtain pre-trial discovery:

(1)   Is there a sufficient designation of the item sought to be discovered? Although the civil rules of discovery are not applicable per se in criminal cases, the techniques of discovery embodied in those rules will often be applicable in criminal proceedings." *Antrobus* v. *State, supra.* Trial Rule 34(B), Indiana Rules of Trial Procedure which concerns discovery of documents in civil cases says: "The request shall set forth the items to be inspected either by individual item or by category, and describe each item and category with reasonable particularity." We believe this would be a workable rule in the area of criminal discovery. Whether a specific request is set out with "reasonable particularity" will depend on the facts of each individual case, the crime charged, the nature of the items sought to be discovered, the degree of discovery of other items of information, the nature of the defense, etc. This requirement must not be construed strictly against the defendant but should be administered so as to maximize pre-trial discovery and the benefits to the judicial system which flow therefrom. ABA Minimum Standards for Criminal Justice: Discovery and Procedure Before Trial.

(2)   Is the item sought to be discovered material to the defense? The item sought to be discovered should be consid-

ered material to the defense if it appears that it might ██ be "beneficial in the preparation of appellant's case." *Bernard* v. *State, supra.* As was pointed out in *Bernard,* the materiality of some categories of information is self-evident, *e.g.,* witnesses lists, deposition of witnesses, pretrial statements of the defendant, results of medical and scientific examinations, inspection of items of real evidence, etc. Where the materiality of the information is not self-evident the appellant must indicate its potential materiality to the best of his ability considering the fact that *actual* beneficiality can often only be determined by the inspection that is sought.

(3) Has the State made a sufficient showing of its paramount interest, if any, in non-disclosure? Such a determination will depend upon the type of interest put forth, *e.g.,* to prevention of intimidation of witnesses, informer's privilege, to prevention of harassment of prosecutor, the category of information sought, etc. In this case the appellee made no effort to show its paramount interest in non-disclosure of any information sought by appellant so this question is not an issue here.

In light of the foregoing discussion, we hold that the trial court did not err in denying this part of appellant's motion because there is not a sufficient designation of the documents sought. Appellant has not described the individual items or category of items sought with "reasonable particularity." "Any and all inter-office memos, notes and reports . . . concerning the robberies" is too general and unspecific and is nothing more than a fishing expedition or an attempted rummaging about in the police files hoping to turn up something to use at the trial. Appellant made no effort to describe the kind of thing he hoped to find in the police files. The appellant's description must be with reasonable particularity so as to enable the appellee to locate the documents sought and the trial court to determine if appellee complied with its order. Appellant did not fulfill that requirement by this motion. Of

course, the trial court should not use this requirement to place appellant in the position of having to describe the items sought with a degree of particularity only attainable as a result of the inspection sought.

### D.

Appellant's next contention is that the trial court denied appellant's pre-trial motion to discover any statements from "the persons allegedly robbed" by appellant. Both of the employee-victims testified at appellant's trial. At the time of this trial on May 12, 1969, a criminal defendant had no right to discover statements made prior to trial by witnesses who testify at trial and it was not reversible error to deny such a motion. In *Antrobus* v. *State, supra,* decided on February 3, 1970, this Court held for the first time that a defendant in a criminal case could obtain all pre-trial statements of witnesses *after they had testified* at trial for possible use in impeaching the witness with a prior inconsistent statement. The Court stated:

> "With respect to a defendant's right to obtain such statements we hold the rule to be this: First, the defendant must lay the proper foundation for his motion or the trial court may properly deny it. An adequate foundation is laid when: (1) The witness whose statement is sought has testified on direct examination; (2) A substantially verbatim transcription of statements made by the witness prior to trial is shown to probably be within the control of the prosecution; and, (3) The statements relate to matters covered in the witness' testimony in the present case.
>
> "After laying this foundation, the defendant may move the trial court to require the State to produce such statements for use by the defense in cross examination and impeachment of the witness. If the foundation is proper the trial court must grant the motion and order the statements turned directly over to the defendant *unless* the State alleges: (a) There are no such statements within the control of the State. The trial court must conduct a hearing on the conflicting claims of the parties to resolve this issue. (b) There is a necessity for keeping the contents of the statements confidential. (c) The statement also contains

matter not related to the matters covered in witness' testimony and the State does not wish to reveal that portion. In the latter two cases the statements need not be given directly to the defendant but should be given to the trial court for his decision concerning the State's claim. If the trial court agrees with the State then on (b) and (c) the trial court may deny defendant's motion or turn over to the defendant only the relevant portion of the statement." (Original emphasis.) 254 N. E. 2d at 876, 877.

This applies to statements made to police or grand jury and the statements need not have been signed by the witness nor used by the prosecutor in order to be discoverable. In *Antrobus,* we did not discuss the discovery of these statements prior to trial and that case does not purport to afford the right to pre-trial production of such statements. Under the *Bernard principle* the trial court has the power to permit the pre-trial production of such statements upon the laying of an *Antrobus*-type foundation tailored to fit the pre-trial situation and such a trial court order would not be an abuse of discretion. However, the trial court decision *not* to exercise that power in this case was not erroneous either.

## E.

Appellant's next allegation of error concerns the appellee's compliance with the trial court discovery order. The trial court granted appellant's request for the names and addresses of all persons who were questioned or detained during the course of the investigation of this robbery. The appellee supplied appellant with a list of names and addresses of persons *who the appellee anticipated using at the trial.* Appellant argues that the appellee did not comply with the trial court order because that order covered potential witnesses other than those the appellee saw fit to call as witnesses to support its case. It is clear that a list of persons appellee intended to call as witnesses to prove its case is *not* the same thing as a list of persons who were questioned or detained with reference to this robbery. It was just those persons who might

have relevant information unfavorable to the appellee and hence not on appellee's list of witnesses, which appellant was trying to discover. The trial court saw the obvious merit of this position and granted appellant's request. Appellant is not alleging any error by the trial court but is claiming that the appellee did not comply with the trial court order. However, there is nothing in the record to show that appellant objected to appellee's form of compliance with the trial court order or sought to force appellee to comply with the order. For all that appears from the record appellant was satisfied with the appellee performance for one reason or another.

When a defendant in a criminal case obtains a favorable ruling from a trial court on a discovery motion and the defendant thinks the appellee has not complied with the order, the defendant must call this to the attention of the trial court in some manner and attempt to compel the prosecution to comply with the order. Appellant took no such action in this case and has therefore waived any error resulting from the non-compliance by the appellee.

The appellant argues that regardless of the scope of the rules of criminal discovery the due process clause of the Fourteenth Amendment to the United States Constitution required the appellee to disclose prior to trial the information appellant requested, citing *Brady* v. *Maryland* (1963), 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215, wherein the U. S. Supreme Court said:

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 37 U. S. at 87.

This Court recognized the principle of *Brady* in *Fair* v. *State* (1969), 252 Ind. 494, 250 N. E. 2d 744, however, it does not apply unless there is some reason to believe that the prosecution did suppress evidence. Appellant offers no reason to

believe that the prosecutor suppressed any evidence of any kind. There is no evidence of a violation of due process here.

## F.

Appellant's next allegation is that the trial court erred in denying the appellant's motion for mistrial based on certain testimony of Deputy Sheriff Fred Jackson.

The pertinent testimony of Jackson is as follows:

"Q. All right. Now you stated that you asked him about a gun, for what purpose, what lead up to that?

A. Well, it was on the dispatch over the air that the subject was armed with a sawed off shotgun.

Q. All right, what, if anything, was said about a gun?

MR. KERN: Now before he gives his answer, Your Honor, we would like to ask a preliminary question.

THE COURT: Very Well.

PRELIMINARY QUESTION BY COUNSEL FOR DEFENDANT

Q. You said you advised the defendant of his rights?

A. Right.

Q. Precisely what did you advise him?

A. I advised the defendant that he had a right to remain silent, that anything he said may be used against him in the court of law, that he has the right for an attorney to be present before him now, and if he doesn't have the money to afford an attorney, the court shall appoint one for him.

Q. And precisely when did you advise him of his rights?

A. The subject was on the ground and we were trying to handcuff the subject.

Q. You were trying to handcuff him and he was struggling. . . .

A. He was still beligerent at that time.

Q. And he was struggling and you are advising him of his rights?

A. Right.

MR. KERN: Your Honor, we will object to the witness answering the question for the reason that an

accused could not possibly comprehend the advice being given to him in terms of his rights when he is on the ground and struggling with two police officers in the process of being handcuffed."

The trial court sustained appellant's objection on the ground that there was no evidence of a waiver by appellant of his rights. Immediately thereupon the prosecutor resumed direct examination of the witness as follows:

"Q. After you advised him of these four Miranda rights, what did he say or do?
A. He said, I did it.

MR. KERN: Now, Your Honor, we move that that be stricken and at this time move for a mistrial.

THE COURT: The motion to strike is sustained. The jury is admonished to completely disregard the answer of the witness. The motion for mistrial is overruled. All right, go ahead."

Appellant argues that the trial court committed error in refusing to declare a mistrial. In *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312, this Court held that in deciding the question of whether a mistrial should have been granted it should be approached *as if* it were a question of whether the inadmissible evidence was harmless under the harmless error standard. Here we are concerned with evidence of a confession inadmissible under *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and which is thus a federal constitutional error. Whether the trial court's efforts to cure this defect were sufficient is itself a federal question and requires the application of federal standards. *Chapman* v. *California* (1967), 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705. In that case the court held that a federal constitutional error can be deemed harmless only if the court can say that "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Chapman* v. *California, supra.* There are two aspects to this standard: First, the impact of the error on the jury deliberation;

second, the degree of assurance the court must feel with respect to that impact.

In determining the impact on the jury we must look at the nature of the inadmissible evidence, the nature of the rest of the evidence in the case, whether the "evidential harpoon" was the result of calculated action by the prosecution, etc. *White* v. *State, supra.* In determining whether the trial court erred, of course, we must look at the evidence which had been submitted up to the time he was asked for the mistrial. Here the evidence was an alleged confession by the appellant injected during the State's case-in-chief and we do not see how the trial court could have determined beyond a reasonable doubt it would not contribute to the verdict. A confession is probably the single most powerfully incriminating piece of evidence there is and it could very rarely be said not to be a major component of the State's case-in-chief. *Beck* v. *State* (1968), 250 Ind. 276, 235 N. E. 2d 699. The recent case of *Monserrate* v. *State* (1971), 256 Ind. 623, 271 N. E. 2d 420, is relevant here. In that case the State introduced a statement by appellant's co-defendant which incriminated the appellant. The trial court instructed the jury that the statement was not to be considered as evidence against appellant. We reversed on the basis of *Bruton* v. *U. S.* (1968), 391 U. S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, where the U. S. Supreme Court stated:

> "Nevertheless, as was recognized in Jackson v. Denno, supra . . . there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Compare Hopt v. Utah,, supra. . . . Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." 391 U. S. at 135.

Since the trial court instruction could not, at the time given, be deemed to cure the defect the trial court refusal to grant

the motion for mistrial was error. However, due to the peculiarities of this case we hold that the error was harmless. As already stated the standard where a federal constitutional error is involved is that it is deemed harmless only if the appellate court can say "beyond a reasonable doubt the error complained of did not contribute to the verdict obtained." *Chapman* v. *California* at 828. In applying this standard in this type of case the appellate court performs essentially the same task the trial court and the appellate court did in ruling on the motion for mistrial except that the appellate court now looks at all of the evidence in the case and not just that known to the trial court at the time of the motion. In *Monserrate* we held the error was not harmless because of weakness in the other evidence in the case. Here we have two very solid eye-witnesses who identified appellant, the appellant found running near the scene of the robbery with over $500.00, the amount stolen, stuffed loosely in his pockets, the gun used found near the point of appellant's arrest.

Appellant's defense rested on insanity at the time of the commission of the act and the witnesses he presented did not controvert any of the State's case. This rendered the evidence of his confession insignificant and we hold that beyond a reasonable doubt it did not contribute to the verdict.

Judgment affirmed.

Givan, Hunter and Prentice, JJ., concur; Arterburn, C.J., consurs in result.

NOTE.—Reported in 274 N. E. 2d 387.