**David PEMBERTON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 06S00–8806–CR–523.**

Supreme Court of Indiana.

Oct. 9, 1990.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant and William Wethington were arrested in connection with a robbery and associated crimes which occurred on October 2, 1986. The two were tried in separate jury trials. Appellant was found guilty on Count I, robbery, a Class B felony, I.C. 35–42–5–1, Count II, theft, a Class D felony, I.C. 35–43–4–2, Count III, criminal confinement, a Class B felony, I.C. 35–42–3–3, and Count IV, intimidation, a Class C felony, I.C. 35–45–2–1. The trial court sentenced appellant to eighteen years on Count I and four years on Count II, these sentences to run concurrently, and to eighteen years on Count III and six years on Count IV, these sentences to run consecutively to those imposed on Counts I and II

and to each other. Appellant therefore received an executed sentence of forty-two years, and he now brings this direct appeal, raising several allegations of error. Because we find that appellant was denied the effective assistance of counsel such that a reversal of his convictions and a remand for a new trial are warranted, we do not reach his other claims.

At about 6:00 a.m. on October 2, 1986, two men entered the home of Pat Adair and forced Pat and her two grown children, Danny and Dianne, to lie on their living room floor. One of the men, who was armed with an automatic handgun, searched Pat's bedroom for marijuana while the second man, who was armed with a shotgun or a rifle, stood over the Adairs. After taking $120 from a purse in the bedroom, the first man came back into the living room and demanded to know where the marijuana was hidden. Pat told him it was in the freezer. The first man then tied the Adairs' hands with lengths of rope he cut from a clothesline and gagged them with torn sheets from Danny's bed. A blanket was then put over the Adairs, and gasoline was poured onto it from a container the intruders had brought with them. The two men left, taking the money and the marijuana with them, when a woman's voice called out from the porch that she had seen something. After Dianne checked on her baby, who had been upstairs, Danny took her next door to summon the police.

Appellant and Wethington were stopped about three miles from the Adair house by a Boone County deputy sheriff between 7:30 and 8:00 a.m. that morning as they walked south along State Road 39 just outside of New Brunswick. Deputy Sheriff Dennis Brannon had been part of the investigation at the Adair house and was on his way back to the station when he heard a police radio broadcast that "two scruffy looking hitchhikers" had been seen walking along State Road 39. After asking the two men where they had been and where they were going, Brannon patted them down because he had noticed something protruding from above appellant's belt. The protrusion proved to be a large freezer bag with six smaller plastic bags of marijuana

in it. An automatic handgun, a knife, some gloves, and a billfold containing $210 and some change were taken from Wethington.

Upon orders he received, Brannon took appellant and Wethington to a nearby intersection. The two men stood in handcuffs beside Brannon behind his car, and the items produced by the search were placed on the hood of the car. Danny and Dianne Adair viewed appellant and Wethington from separate police cars parked across the road. Both identified Wethington as the man with the handgun, but were less sure that appellant was the man with the shotgun. Upon Danny's request, he was driven by the two men so that he could get a closer look at appellant. At one point, Brannon picked up the handgun and the knife and handed them to Sheriff Ern Hudson in full view of both the Adairs, and Dianne told Officer Myers that those were the weapons she had seen the first intruder using that morning.

Appellant and Wethington were then taken to the Center Fire Station. Pat, Danny, and Dianne Adair were brought in individually and seated at the table with a police officer. The gun, knife, and marijuana taken from the two men were placed on a chest freezer in the meeting room of the station and were clearly visible from where the victims were seated. Before each of the victims, appellant and Wethington, in turn, were brought into the room by a policeman. They emerged from a side door, walked across the room in front of the table, then turned and walked back out the door. All three of the Adairs identified appellant and Wethington as the men who had been in their house that morning and, as had been the case at the roadside confrontation, the victims were more sure of their identification of Wethington than of appellant. Sheriff Hudson also displayed the weapons to Pat, and she positively identified them.

In a pre-trial hearing, counsel for appellant argued vigorously that these two out-of-court confrontations were impermissibly suggestive and that testimony concerning identification which resulted from these procedures should be suppressed.[1] Appellant's motion to suppress was denied. At trial, all three Adairs made an in-court identification of appellant as the man with the shotgun who was in their home on October 2. The trial court also admitted testimony from Danny and Dianne regarding their roadside identifications of appellant and testimony from Danny, Dianne and Pat regarding their identifications of appellant at the fire station. Appellant's counsel made no objection to the in-court identification nor to the testimony concerning the two sets of out-of-court identifications at trial. Appellant argues that he was denied the effective assistance of counsel because his attorney failed to preserve the issue of the admissibility of this crucial testimony for appeal by failing to make a contemporaneous trial objection.

■ The United States Supreme Court has established a two-part standard by which claims of ineffective assistance of counsel are evaluated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant must make a preliminary showing that the performance of his trial counsel was deficient; he must then show that he suffered prejudice as a result. *Id.* Counsel is presumed to be competent, and performance is reviewed with deference and without the distortions of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. *Duncan v. State* (1987), Ind., 514 N.E.2d 1252.

■ Appellant has made the requisite showing of strong and convincing evidence necessary to rebut the presumption that he received reasonably effective assistance of counsel. Trial counsel fully and aggressively litigated the admissibility of the identification testimony on due process grounds during the pre-trial hearing, then inexplica-

---

1. At the time of this hearing, the causes of both appellant and Wethington were still joined for trial, and counsel for both defendants participated jointly in the argument. Both defendants moved that the identification evidence be suppressed, and both motions were denied. Subsequently, the trial court granted a motion by appellant for severance and separate trial.

bly failed to take that procedural step at trial to preserve the claim for appeal. The major issue at trial was identification. There is no conceivable rational basis upon which to predicate a decision to not object. This can in no way be characterized as a strategical or tactical decision gone awry. Appellant has adequately demonstrated that his trial counsel's performance was deficient.

He has also demonstrated sufficient prejudice. The outcomes of the separate, but related, trials of both appellant and Wethington turned on the identification of the perpetrators by the victims. The two pre-trial confrontations staged by the police between the victims and appellant and Wethington were condemned by this Court in *Wethington v. State* (1990), Ind., 560 N.E.2d 496, and this was a close case on the facts with respect to whether there was a basis for the in-court identifications independent of the tainted show-ups.[2] As a result of trial counsel's failure to object to the identification testimony when offered at trial, appellant was robbed of an in-court ruling by the trial judge resolving that close case. Such a ruling involves determinations of credibility and weight of evidence produced at both the pre-trial hearings on any motion to suppress and any material trial evidence. *See Magley v. State* (1975), 263 Ind. 618, 335 N.E.2d 811. Further, such a ruling invokes in the trial court a heightened sense of constitutional responsibility, a sense of finality, and an awareness of impending appellate oversight. Finally, as a result of his attorney's failure to object at the appropriate time, appellant also lost the opportunity to make later in-trial or post-trial motions, reasserting the claim of inadmissibility before the judge as trier of fact.

Appellant's convictions are reversed, and this cause is remanded for a new trial.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., dissents with separate opinion, in which PIVARNIK, J., joins.

GIVAN, Justice, dissenting.

The majority opinion misconstrues the facts in this case in holding that "[t]he major issue at trial was identification."

The facts recited by the majority clearly show overwhelming circumstantial evidence of guilt of both appellant and Wethington, his co-perpetrator, even if the victims of the crime had been unable to identify either man. Their capture in the vicinity of the crime within a very short time, their possession of goods taken from the scene, and the possession of a handgun, which was demonstrated to have been fired at the scene, constituted ample evidence to support the jury verdict.

Turning to the identification, I cannot agree with the majority that it was tainted in any way. The victims of the crime testified that these same two persons had robbed them a few weeks earlier but that the robbery was not reported to police. This is not surprising in view of the fact the victims were dealing in marijuana.

The majority makes much of the fact that one of the witnesses was hesitant in his identification of appellant. However, the evidence shows that his hesitancy occurred when he first saw appellant at the roadside identification, but when permitted a closer look at appellant, he made a positive identification.

The majority also makes much of the fact that the victims were permitted to see the items taken from them, which were

---

**2.** It should be noted that this Court's decision in *Wethington,* 560 N.E.2d 496, that an independent basis existed for the victims' in-court identifications of Wethington does not control the resolution of whether there was an independent basis for their in-court identifications of appellant at his trial. A review of the transcripts of evidence of both trials shows that the victims had different opportunities to view each of the intruders, and under somewhat different conditions, and the trial court will have to decide at the appropriate time on remand whether the circumstances surrounding the victims' observation of the man with the shotgun support the admission of any in-court identification of appellant which may be offered by the State at his new trial. *Lyons v. State* (1987), Ind., 506 N.E.2d 813; *Dillard v. State* (1971), 257 Ind. 282, 274 N.E.2d 387.

found on appellant and Wethington at the time of their arrest. To say that such viewing was impermissibly suggestive, is incredible in view of the fact that only one of the witnesses was hesitant upon his first observation of appellant, that no hesitancy existed on the part of the others, that both men had robbed them previously, and that all witnesses immediately identified Wethington as one of the perpetrators. In view of all this, to say that the presence of the items taken during the robbery at the identification constituted improper police action is unrealistic.

For the majority to charge counsel with deficient performance in view of the circumstances of this case is unjustified.

I would affirm the trial court and hold that there was no deficiency of performance on the part of trial counsel.

PIVARNIK, J., concurs.