**James GLASER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9009–CR–537.

Court of Appeals of Indiana, Second District.

July 24, 1991.

Steven R. Eichholtz, Mears Tucker & Eichholtz, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

SHIELDS, Judge.

James Glaser appeals his conviction of auto theft, a class D felony,[1] claiming ineffective assistance of counsel.

We reverse.

### ISSUE

The issue on appeal is whether Glaser's trial counsel was ineffective.

### FACTS

At approximately 10:30 p.m. on December 2, 1989 Robert Moreno drove into a restaurant parking lot. Moreno observed another car in the lot. Two men were sitting in the car while a third man stood outside the car "getting sick." Record at 43. Concluding these persons "didn't have time to mess with [his] car" Moreno left his car's motor running and entered the restaurant. Record at 43. Inside, he heard the squeal of tires and ran outside to see someone drive away in his car. The other car with two men inside also was leaving the parking lot. Moreno ran along side the passenger side of his car yelling for the driver to stop. His efforts to open the door

were unsuccessful because the door "didn't work." Record at 45. Moreno testified he was approximately three feet from the driver for about 30 seconds as he ran beside the car. The car left the parking lot and went only a short distance before the driver lost control and hit the median. Moreno ran to his car as the driver jumped out and ran down the street. Moreno described the driver of his automobile to the police as "white male, blondish brown hair. Wearing a jacket, and blue jeans." Record at 61.

Some unspecified time later an officer advised Moreno "we possibly had a suspect." Record at 59. Moreno accompanied the officer to a location where the police had a car stopped that matched the description of the second car in the restaurant parking lot. Three men were arranged in "somewhat of a line." Record at 59. Moreno identified the three individuals by placing them "in different locations as he was entering the restaurant." Record at 59. Moreno also identified Glaser as the individual he observed driving his car as he ran alongside it and as the individual running from Moreno's disabled car. Moreno identified Glaser at trial. All this identification evidence was received without objection.

### DISCUSSION

Glaser argues his trial counsel was ineffective for failing to move to suppress or object to Moreno's identification testimony based upon an impermissibly suggestive show-up.

 The standard of an attorney's performance is that of reasonably effective assistance. To prevail on his claim, Glaser must show his attorney's performance was deficient and show his defense was prejudiced by the deficient performance. *Townsend v. State* (1989), Ind., 533 N.E.2d 1215. It is presumed that counsel has fully discharged his duty, and strong, convincing evidence is required to rebut this presumption. *Stewart v. State* (1988), Ind., 517 N.E.2d 1230.

Glaser argues *Pemberton v. State* (1990), Ind., 560 N.E.2d 524 is controlling.

---

**1.** IC 35–43–4–2.5 (1988).

We agree. In *Pemberton,* as in the instant case, trial counsel failed to proffer any objection to the in-court identification or the out-of-court identifications based upon the claim out-of-court show-ups were impermissibly suggestive. Because the major issue at Pemberton's trial was identification, as it was here, a majority of our supreme court concluded Pemberton had adequately demonstrated the deficiency of his trial counsel's performance because "[t]here is no conceivable rational basis upon which to predicate a decision to not object. This can in no way be characterized as a strategical or tactical decision gone awry." *Pemberton* at 527.

The court further concluded Pemberton demonstrated prejudice because the show-ups were impermissibly suggestive and it was "a close case on the facts with respect to whether there was a basis for the in-court identifications independent of the tainted show-ups." *Id.* This same situation exists here.

■ Show-up identifications held immediately after the crime are not impermissible *per se* because they allow the witness to view the suspect while the image of the perpetrator is still fresh in the witness's mind. *Russell v. State* (1988), Ind., 519 N.E.2d 549. Whether any particular show-up is unduly suggestive depends upon the circumstances under which it is conducted. *Whitlock v. State* (1981), Ind., 426 N.E.2d 1292. Suggestive circumstances include the police informing witnesses that arrested suspects are among those included in a photographic display, *Sawyer v. State* (1973), 260 Ind. 597, 298 N.E.2d 440, or a line-up, *Whitt v. State* (1977), 266 Ind. 211, 361 N.E.2d 913; when a witness is shown only one photograph, *Parker v. State* (1976), 265 Ind. 595, 358 N.E.2d 110, or when only one person is shown in a show-up, one and one-half days after the crime, *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766.

■ In the instant case, the evidence is such that the trial court could conclude the show-up was or was not impermissibly suggestive. The officer's statement they had a possible suspect is certainly suggestive.

The show-up was not one-on-one but included three individuals. However, the multi-person show-up is not necessarily an attenuating circumstance because three individuals were "involved" in the instant offense. Also, the record is silent as to the lapse of time between the confrontation in the parking lot and the show-up although it was undoubtedly relatively short. The record is also silent as to the available light in the parking lot and adjoining street, an important circumstance inasmuch as the incident occurred around 10:30 p.m. on a winter night. Further, Moreno's view of the perpetrator occurred as Moreno was running alongside his car trying to open the passenger door. Thus, had an objection been made, the suggestiveness of the show-up would have turned on an evaluation by the trial court whether, under the totality of the circumstances, the confrontation procedure was conducted "in such a fashion as to lead the witness to make a mistaken identification." *Dillard v. State* (1971), 257 Ind. 282, 286, 274 N.E.2d 387, 389.

This same evidence also fails to establish by clear and convincing evidence that an independent basis for an in-court identification exists within the framework of the harmless constitutional error doctrine of *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Factors relevant to the determination of whether an independent basis exists to support the admission of the in-court identification are the amount of time the witness was in the presence of the perpetrator and the amount of attention the witness had focused on him, the distance between the two and the lighting conditions at the time, the witness's capacity for observation and opportunity to perceive particular characteristics of the perpetrator, the lapse of time between the crime and the subsequent identification, the accuracy of any prior descriptions, the witness's level of certainty at the pre-trial identification and the length of time between the crime and the identification.

*Wethington v. State* (1990), Ind., 560 N.E.2d 496, 503.

Thus, as in *Pemberton,*

[a]s a result of trial counsel's failure to object to the identification testimony when offered at trial, [the defendant] was robbed of an in-court ruling by the trial judge resolving that close case. Such a ruling involves determinations of credibility and weight of evidence produced at both the pre-trial hearings of any motion to suppress and any material trial evidence. Further such a ruling invokes in the trial court a heightened sense of constitutional responsibility, a sense of finality, and an awareness of impending appellate oversight. Finally, as a result of his attorney's failure to object at the appropriate time, appellant also lost the opportunity to make later in-trial or post-trial motions, reasserting the claim of inadmissibility before the judge as trier of fact.

*Pemberton* at 527 (citation omitted). In fact, Glaser was robbed of both a pre-trial and trial ruling because his counsel failed to move either to suppress the identification or to object to its admission.

The failure of Glaser's counsel to object to the admissibility of identification testimony constituted ineffective assistance because he failed to present to the trial court the issue whether the pretrial show-up was so suggestive as to give rise to a substantial likelihood of misidentification, and the issue whether the witness nevertheless would have been permitted to make an in-court identification because there was clear and convincing evidence that an independent basis for the identification existed. *Hill v. State* (1982), Ind., 442 N.E.2d 1049. Thus, as in *Pemberton,* there is no rational basis upon which counsel could predicate a decision not to object. Similarly, as in *Pemberton,* the omission was prejudicial because the outcome of Glaser's trial turned on the identification of the perpetrator by the victim. Therefore, counsel's performance was deficient and prejudiced the defendant.

Judgment reversed and a new trial ordered.

RATLIFF, C.J., and SULLIVAN, J., concur.