**Michael GOURLEY, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 28A04-9310-PC-392.

Court of Appeals of Indiana, Fourth District.

Sept. 21, 1994.

Transfer Denied Nov. 23, 1994.

---

Susan K. Carpenter, Public Defender, Jodi Uebelhack, Deputy Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

In 1983, Michael Gourley was convicted of robbery as a class A felony.[1] His conviction was affirmed on direct appeal. He now appeals from the denial of his petition for post-conviction relief. We affirm.

### ISSUE

Was Gourley denied his constitutional right to effective assistance of counsel when his trial counsel failed to object to the crime victim's out-of-court and in-court identification testimony?

### FACTS

The "evidentiary facts" giving rise to Gourley's charge and conviction were summarized by our supreme court as follows:

"On the evening of December 11, 1982, two men entered a liquor store in Linton, Indiana. Donald Evans, the store clerk, observed the two men for approximately five or six minutes. The men purchased a six-pack of beer and left. Approximately twenty minutes later, the two men reentered the store. One of the men had a club in his hand and stuck it into Evans's stomach and ordered him to back up and raise his hands. Evans complied. The intruders unsuccessfully attempted to open the cash register, and ordered Evans to open it. After Evans complied, one of the men struck Evans on the head with the club which was about three feet long and looked like an ax handle. Evans was then struck a second time on the back of the head, and the robbers left with cash from the register. Evans immediately telephoned the police, and then reclined back on the floor because he was dizzy.

Officers Bill Burress and Norman Watson were present at the Linton police station when Evans called to report that he had just been robbed and struck on the head. Burress immediately went to the scene of the crime and observed the victim near the phone, bleeding from the head. Before Evans was removed from the scene by ambulance, he described the two attackers. One was approximately six feet tall and had long dark hair and a mustache. The other man was slightly shorter, with light hair and wearing an army fatigue jacket. Evans also stated that he had been struck with an object similar to a baseball bat. Upon leaving the scene of the robbery, as Burress and Watson were driving past a local motel, they observed a change in position of a van which they had seen earlier in the evening. The van did not have a license plate, and the officers stopped to check the registration. There was a temporary Illinois registration on the windshield in Parr's name. The officers then spoke with the motel manager and checked the motel register. They discovered that the driver was registered as 'Perry' and they returned to the van to get information from the registration. As they pointed a flashlight at the permit, it illuminated the interior of the van and the officers saw an object which appeared to be a large tool handle. It was painted red and Watson thought the paint might be blood. The officers called for assistance and sev-

---

1. Ind.Code 35–42–5–1.

eral officers including police chief Jesse Martin responded. The chief, accompanied by the motel manager, went to 'Perry's' room and knocked on the door. Initially a woman answered, and then Parr, wearing a fatigue jacket, came to the door. The chief questioned him about his ownership of the van and about its registration. Parr and the chief walked to the van and Parr pointed out the temporary permit. At this point, the chief asked Parr if he owned the club in the back of the van and Parr answered affirmatively. The chief asked to examine the club and Parr consented. Parr opened the van, took out the handle and gave it to Chief Martin. When asked by the chief if he would be staying at the motel, Parr replied that he would be there until morning. The chief asked permission to keep the handle until the next morning, and Parr agreed. The chief radioed to other officers, instructing them to patrol the area closely to see if the van had left. When observed being driven shortly afterward, the van was stopped and found to be occupied by Parr and Gourley,[2] who fit Evans's description of his attackers. Parr and Gourley were placed in handcuffs and taken to the Linton police station.

After Evans was treated and released from the hospital later that night, he was driven to the police station by his employer's wife. Chief Martin had left a message requesting him to view two suspects. Evans arrived at the police station about 1:00 a.m. on December 12, 1982, less than four hours after the robbery. He was placed in a police vehicle with its headlights aimed at an entrance to the station. Defendants, handcuffed and accompanied by two uniformed officers, were brought onto the steps at this entrance, a distance of ten to fifteen feet from Evans, who positively identified defendants as his assailants. During Evans's testimony at trial, Parr and Gourley were again identified as the two men who robbed the store and injured Evans."

*Parr v. State* (1987), Ind., 504 N.E.2d 1014, 1019–20.

Gourley's trial counsel filed a motion to suppress admission of Evans's identification of the defendants because of "unnecessarily suggestive" show-up procedures. R. at 42. A hearing was held; briefs were filed; the motion was denied.

At trial, Gourley's counsel did not object when Evans's out-of-court and in-court identification testimony was admitted. Gourley's appellate counsel challenged only the trial court's ruling on the motion to suppress; the supreme court found the issue waived because trial counsel had failed to object. *Parr, supra.*

The post-conviction court held an evidentiary hearing at which Gourley's trial counsel testified that he decided not to object at trial because his strategy was to use the allegedly suggestive identification procedures to undermine the credibility of the prosecution witnesses: "the story we were getting about the ... show-up was exactly the story I wanted to hear and I wanted to argue to the jury." P.C.R.R. at 124. "[M]yself and co-counsel ... felt like the best approach to take in trying to put in question ... identification was to show the whole history of the identification process that went on that evening." P.C.R.R. at 118–19. "[I]t was certainly enough to give the jury something serious to think about as to whether or not the victim in this case was truly making an independent observation of the defendant." P.C.R.R. at 119. Gourley's appellate counsel submitted an affidavit concerning his framing of the direct appeal. The record of Gourley's original trial was made part of the record.

Gourley appeals denial of his petition for post-conviction relief, claiming his trial counsel was ineffective for having failed to object to testimony of the pretrial identification, the suggestiveness of which tainted the in-court identification. Accordingly, Gourley contends, his appellate counsel was also ineffective for failure to raise trial counsel's ineffectiveness.

---

2. Our review of the record indicates that when they were stopped after departing from the mo-

tel, Parr was in the van but Gourley was on foot.

## DISCUSSION AND DECISION

■ A claim of ineffective assistance, as violating the Sixth Amendment of the U.S. Constitution, is subject to a two-part test. In order to prevail, Gourley must show that 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability that but for counsel's deficient performance the result of the proceedings would have been different. *Stroud v. State* (1992), Ind.App., 587 N.E.2d 1335, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Mott v. State* (1989), Ind., 547 N.E.2d 261. Counsel is presumed competent; performance is reviewed with deference and without the distortions of hindsight. *Mott, supra.* Thus, while in retrospect one might conclude that "the strategy and performance at issue was not the best," isolated instances of poor strategy do not necessarily amount to ineffectiveness of counsel. *Id.* When an ineffective assistance of counsel claim hinges upon counsel's failure to interpose an objection, the appellant must demonstrate that a proper objection would have been sustained by the trial court. *Hunter v. State* (1991), Ind., 578 N.E.2d 353.

■ Gourley contends the procedure whereby Evans identified Gourley in front of the police station in the early morning hours of December 12, 1982, was "so suggestive that it cannot be condoned as legally acceptable" and, therefore, Evans's identification of Gourley must be suppressed. Appellant's brief at 15. Further, Gourley argues, Evans's in-court identification was "tainted by the out-of-court procedure" and lacked the independent basis required for its admission. *Id.*

Confrontations conducted for identification purposes which are "so unnecessarily suggestive and conducive to irreparable mistaken identification" deny the accused due process of law under the Fourteenth Amendment. *Dillard v. State* (1971), 257 Ind. 282, 286, 274 N.E.2d 387, 389 (quoting *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)). However, when an out-of-court identification based on an impermissibly suggestive confrontation is erroneously admitted, "such error may be harmless

constitutional error under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *see also Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977)." *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 502. "[F]urthermore, a subsequent in-court identification may still be admissible if the State establishes by clear and convincing evidence that an independent basis for that in-court identification exists." *Id.* citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Heiman v. State* (1987), Ind., 511 N.E.2d 458; *Lyons v. State* (1987), Ind., 506 N.E.2d 813.

Gourley refers us to *Pemberton v. State* (1990), Ind., 560 N.E.2d 524, wherein the supreme court found trial counsel ineffective for having litigated the admissibility of identification testimony pre-trial but then not preserving the matter for appeal by objection at trial. Specifically, Gourley quotes the *Pemberton* declaration that when the major issue at trial is identification, "[t]here is no conceivable rational basis upon which to predicate a decision to not object" and such cannot be "characterized as a strategical or tactical decision gone awry." *Id.* at 527. The majority in *Pemberton* took pains to note that "this was a close case on the facts with respect to whether there was a basis for the in-court identifications independent of the tainted show-ups." *Id.* at 527. In the companion case, *Wethington v. State* (1990), Ind., 560 N.E.2d 496, "an independent basis existed for the victims' in-court identifications of Wethington," *Pemberton, supra* at 527 n. 2, but *Pemberton* required the trial court on remand to decide whether "the circumstances surrounding the victims' observations" of the other man "support the admission of any in-court identification." *Id.*

"Factors relevant to the determination of whether an independent basis exists to support the admission of the in-court identification are the amount of time the witness was in the presence of the perpetrator and the amount of attention the witness had focused on him, the distance between the two and the lighting conditions at the time, the witness's capacity for observation and opportunity to perceive particular characteristics of the perpetrator,

the lapse of time between the crime and the subsequent identification, the accuracy of any prior descriptions, the witness's level of certainty at the pre-trial identification and the length of time between the crime and the identification."

*Wethington, supra* at 503.

We look to the trial transcript for evidence regarding Evans's initial observations of Gourley. On taking the stand February 17, 1983, Evans said he had been "robbed and beaten" the evening of December 11, 1982. R. at 361. He said he saw the people who did this, and had also seen them "about twenty minutes earlier" when "they came in and bought a six pack." *Id.* As to the first occasion, Evans identified the brand of beer, the price, and how the men paid for it: "One guy had two dollars, but he didn't have any change so the other one said he had the $.75." R. at 362. He proceeded to describe what happened when the two came in the store a second time—the robbery and beating. When Evans came from the back of the store, where he had been "bagging ice," he saw one "guy standing behind the register and as I was still walking the other guy stepped from around the corner in front of me." R. at 362. The second guy "had a club in his hand and he stuck it in my stomach and he said back up and reach." *Id.* "He backed me up past the ice machine in front of the office door and I knelt down and sat there for about 30 seconds and he said how do you open this thing." R. at 363. Then Evans "stood back up and went in front of the store and he said open it and I was standing on the opposite side of the counter and I reached over with my right hand to open it." *Id.* The lights were on during the incident and Evans got "a good look" at the two. R. at 31. He then pointed to Gourley and Parr as the two involved and pointed to Gourley as the one who struck him with a club. He identified a picture of Gourley as being an accurate representation of the one who struck him and as he looked on the evening of the robbery. Evans testified that he gave police a description of Gourley as "about six feet tall," with "shoulder length dark hair and a mustache." R. at 369. When Evans went to the police station between 12:30 and 1:00 a.m., two individuals were brought outside for him to look at and he had "no trouble" identifying the men as those who committed the robbery. R. at 380. "By them being in there earlier" as well as the robbery, Evans "remember[ed] what they looked at" and was certain they were the same two people. R. at 382.

Evans's testimony at trial was within a little more than two months of his being robbed and beaten. Evans had observed Gourley on two separate excursions into the store. During the robbery, Gourley "stepped from around the corner" in front of Evans, and Evans must have been nearly face-to-face with Gourley when Gourley placed the club against Evans's stomach and "backed" him past the ice machine. The March 1983 presentence report shows Gourley's height as six feet. The picture of Gourley admitted as an exhibit shows he had shoulder length dark hair and a mustache.

We have no quarrel with the law of *Pemberton.* However, Gourley's factual predicate does not match that of *Pemberton* in one important respect: at the first show-up, two victims were unsure that Pemberton was the man with the shotgun, and at the second show-up all three victims were "more sure" of their identification of Wethington than of Pemberton. *Pemberton, supra* at 526. There is absolutely no evidence in the Gourley record indicating any equivocation on the part of Evans in identifying Gourley.

We believe evidence described above provides a sufficient independent basis for the trial court to have admitted Evans's in-court identification of Gourley. Thus, even if the show-up in front of the police station was impermissibly suggestive and Evans's testimony about identifying Gourley there was admitted in error, Evans's in-court identification was admissible. Since the in-court identification testimony was admissible, trial counsel cannot be held to have been ineffective because Gourley has not shown the objection would have been sustained by the trial court. *Hunter, supra.*

Because Gourley was not denied the effective assistance of trial counsel, his appellate

counsel cannot be found ineffective for failure to raise a claim of ineffective trial counsel.

We affirm.

SHARPNACK, C.J., and RILEY, J., concurring.