**Darryl A. TAYLOR, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 71S00–8605–CR–460.

Supreme Court of Indiana.

Oct. 26, 1987.

Brian May, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Darryl A. Taylor was convicted after a jury trial of burglary, a class B felony, Ind. Code § 35–43–2–1 (Burns 1985 Repl.). The trial court sentenced him to twelve years imprisonment. On direct ap-

peal, Taylor challenges the sufficiency of the evidence supporting his conviction.

When reviewing such a claim, this Court will not reweigh the evidence nor judge the credibility of the witnesses. We will consider only that evidence, and all reasonable inferences therefrom, which support the verdict. The judgment will be affirmed if there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt. *Jones v. State* (1985), Ind., 485 N.E.2d 627.

In this case, the State had the burden of proving that Taylor broke and entered the burglarized home with the intent to commit theft, a felony. Ind.Code § 35–43–2–1; Ind.Code § 35–43–4–2. The intent to commit a felony may be inferred from the circumstances. *Timmons v. State* (1986), Ind., 500 N.E.2d 1212. Circumstantial evidence alone is sufficient to support a burglary conviction. *Jones*, 485 N.E.2d at 628.

The evidence most favorable to the verdict shows that Denise Jacobsen and Bruce Keehn were in the upstairs bedroom of their South Bend home about 11 p.m. on August 14, 1985. The first floor windows were open, but the screens were in place. About five minutes after turning off the interior lights, Jacobsen heard a window slam shut in the living room downstairs. She heard the window raised again and a vase close to the window fall. Jacobsen woke Keehn, and they called police. Jacobsen continued hearing noises downstairs, including whispers, footsteps and movement in the kitchen. She then heard someone open the front door, which had been shut and locked before she retired to bed.

A patrol car arrived, and one officer observed Taylor in the doorway of the Jacobsen/Keehn home. As the officer approached the house, Taylor opened the front screen door and stepped onto the porch. The officer asked Taylor if he had called police, and the defendant responded affirmatively. Taylor said he did not live in the house but that his mother did. He noted that some people were asleep upstairs. The officer saw Keehn in the up-

stairs window and motioned him to come down. By speaking to Keehn inside the home, the officer learned of the prowler's presence and that Taylor did not reside there.

In the meantime, Taylor walked off the porch and met another police officer in the yard. Taylor told that officer that he had been en route to his girlfriend's house when he heard someone in the house scream. Taylor told the officer that he did not know the exact address of his girlfriend but that she lived on LaSalle, the street on which the Jacobsen/Keehn home was located. The officer who had been talking to Keehn returned and informed Taylor that he was a suspect in a possible burglary.

Jacobsen entered her living room and found the contents of her purse strewn across the couch with approximately $60 missing. Keehn's watch and Salem cigarettes also were gone. One of the officers ordered Taylor to empty his pockets on the hood of the patrol car. Taylor complied and revealed a lighter, a pack of Salem cigarettes, a hair pick, keys, a wallet and a dollar bill. The officer patted his clothing. After Taylor returned the items to his pockets, the officers handcuffed him, placed him in the back of a patrol car and drove to police offices for questioning. The officer driving the vehicle noticed that Taylor was moving around in the back seat throughout the drive.

Upon arrival, Taylor gave a sworn statement in which he said he heard a scream coming from the house and then saw two men running from it. He said he ran to the door of the home, and a woman "came down." Jacobsen, the only woman in the home at the time of the burglary, testified that she did not venture from her upstairs bedroom until after police arrived. She also testified that she heard no screams that evening.

After giving the statement, Taylor emptied his pockets again, but this time an additional $32 was found in his back left-hand pocket. The officer who drove Taylor to the police headquarters returned to his

car and checked the backseat. The officer found a $5 bill and a watch which Keehn later identified as his. The officer had emptied the rear seat before starting his shift, and Taylor had been its only occupant.

Taylor contends the evidence at most establishes his presence at the scene and the mere opportunity to commit the burglary. He argues that the watch was never connected to Taylor and therefore cannot be considered as evidence supporting the burglary conviction.

It is true that mere presence at the scene of a crime is insufficient to sustain a conviction for burglary. *Richards v. State* (1985), Ind., 481 N.E.2d 1093. The evidence in this case, however, was much more substantial. Taylor was seen in the doorway of the home at the time of the burglary and falsely told police that he had called them and that his family lived there. He changed his story when confronted by a different officer.

Moreover, Taylor initially failed to reveal all of the cash in his pockets and carried cigarettes identical to those missing from the burglarized home. Despite Taylor's contentions to the contrary, the jury could have reasonably inferred that the watch recovered from the police vehicle had been placed there by Taylor. *See Gray v. State* (1982), Ind., 437 N.E.2d 983. The evidence as a whole was sufficient to support the jury's determination of guilt.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.