**Randy B. SPINKS, Petitioner,**

v.

**Daniel McBRIDE, and Indiana Attorney General, Respondents.**

No. 3:93cv0542 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

June 29, 1994.

Randy B. Spinks, pro se.

David L. Steiner, Office of Indiana Atty. Gen., Indianapolis, IN, for respondent.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On August 3, 1993, *pro se* petitioner, Randy B. Spinks, an inmate at the Indiana State Prison, Michigan City, Indiana, filed a petition seeking relief under 28 U.S.C. § 2254. The return filed by the respondents on April 8, 1994, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). This court granted the petitioner's motion for an extension of time setting a filing date of May 23, 1994 for the traverse. The petitioner has not filed a traverse. The state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

This petitioner was convicted in the Marion Superior Court, Criminal Division I, of the offense of murder by a jury. The Honorable John W. Tranberg imposed the sentence of 45 years. A direct appeal was taken to the Supreme Court of Indiana, and that court sustained the aforesaid conviction in *Spinks v. State*, 507 N.E.2d 567 (Ind.1987). Thereafter, on or about April 12, 1988, petitioner filed for post-conviction relief in the state trial court, claiming ineffective assistance of trial and appellate counsel. The Fourth Dis-

trict of the Court of Appeals of Indiana, speaking through Judge Stanley Miller, on or about July 22, 1991, affirmed the denial of post-conviction relief in an elaborate 14–page opinion in which Judges Conover and Garrard concurred. The opinion of the Court of Appeals entered on July 22, 1991, is attached hereto as Appendix "A" and incorporated herein. The Supreme Court of Indiana denied transfer on September 20, 1991.

Four grounds are here raised for relief under 28 U.S.C. § 2254, as follows:

1. Whether the jury's verdict of guilty to murder must be reversed because it is not based on sufficient evidence and is contrary to the law and because throughout the trial Randy Spinks was denied his lawful presumption of innocence.

2. Whether the trial court committed reversible error in admitting a graphic and gruesome photograph, over objection, where the probative value of the photograph did not outweigh the inflammatory effect and where the photograph proved to be irrelevant to the issues presented at trial.

3. Whether Spinks was denied the effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution, and Article One, Sections Twelve and Thirteen of the Indiana Constitution.

4. Whether Spinks was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments of the United States constitution, and Article One, Sections Twelve and Thirteen of the Indiana Constitution.

*See Respondent's Return to Order to Show Cause.*

 Certainly, the facts as found by the highest court of Indiana, and as found by the Court of Appeals of Indiana may be presumed to be correct. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), stated:

A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment af-

firming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791. The Supreme Court in *Jackson* held:

We hold that in a challenge to a conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.

*Id.* (footnote omitted). *See also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), *cert. denied,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217 (7th Cir.1987), *cert. denied,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane,* 818 F.2d 615 (7th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections,* 817 F.2d 448 (7th Cir.), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

In *Spinks v. State, supra,* the Supreme Court of Indiana, speaking through Justice DeBruler, examined an identical claim based

on the sufficiency of the evidence and explained:

These are the facts from the record which tend to support the determination of guilt: On November 17, 1980, Debra Terhune, Michelle Shift (or Schiff), Karen Koomler and Leander Billiot were present at the home of Randy Spinks (appellant) and Jessica Winters. Debbie Terhune and Jessica Winters engaged in a fight and Randy Spinks intervened by kicking Debbie Terhune in the face. When Terhune attempted to leave, Spinks caught her, beat her, handcuffed her, and forceably (sic) took her into the bedroom. The confrontation between the two continued and Spinks stated "you don't think I'll shoot you, do you", then entered the living room, picked up a gun, returned to the bedroom and a shot was fired Jessica Winters came running out of the bedroom and said he shot her. Leander Billiot instructed Karen Koomler to get her things and Spinks requested Billiot dispose of the gun. Billiot and Koomler departed and threw the gun in a field and Jessica Winters called the police. Billings and Koomler later contacted the Anderson Police Department and reported witnessing a shooting and the Anderson Police Department put them in touch with Indianapolis police. Billiot and Koomler assisted in locating the gun and testified at trial against Spinks. Terhune died on December 12, 1980, from complications resulting from the gunshot.

*Id.*

Here, this court notes that under the formulation of *Jackson,* the opinion of the Supreme Court of Indiana and the opinion of the Court of Appeals of Indiana make it clear that there is more than enough evidence to establish the guilt of this defendant. Sufficiency of evidence was specifically addressed by the Supreme Court of Indiana and not found wanting under state law. Neither is it wanting under the Fourteenth Amendment of the Constitution of the United States. A review of the record in the light most favorable to the prosecution convinces the court that a rational trier of fact could readily have found the petitioner guilty beyond a reasonable doubt of murder.

■ A petitioner under 28 U.S.C. § 2254 has a very difficult time in making a constitutional claim on the basis of the admissibility of evidence. On this issue, the Supreme Court of Indiana explained:

Appellant urges the trial court erred by permitting introduction into evidence of a photograph of Debra Terhune. The photograph was taken more than a month after the shooting and revealed surgical scars and other evidence of medical procedures in addition to the gunshot wound. Appellant's contention is that the photograph was not relevant and only served to inflame the jury.

"To be admitted, it must first be established that the photographs are a true and accurate representation of the things they are intended to portray. *Johnson v. State* (1972), 258 Ind. 648, 283 N.E.2d 532. Their relevancy is determined by whether a witness would be permitted to describe verbally that which the photograph depicts. *Murphy v. State* (1977), 267 Ind. 184, 369 N.E.2d 411. Although the photographs may depict gory, revolting or inflammatory details of the crime when presented to the jury, this is not a sufficient basis for excluding such evidence. *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844; *Meredith v. State* (1966) 247 Ind. 233, 214 N.E.2d 385." *Wilson v. State* (1978), 268 Ind. 112, 374 N.E.2d 45.

The photograph served to clarify testimony concerning the cause of death and therefore was relevant. The fact that it was an autopsy photograph and taken well after the shooting does not negate its relevancy. The surgical scars were a result of attempts to save Terhune's life after she was hot and there was testimony concerning these measures in order to correlate the gunshot with Terhune's death.

*Id.*

This court notes that it is possible to make a fundamental fairness argument contingent upon the due process clause if the error of state law is egregious in nature. This court is quite familiar with those rare cases where it does make a difference, such as *Dudley v. Duckworth,* 854 F.2d 967 (7th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104

L.Ed.2d 169 (1989). It is not for this court to re-weigh the evidence or re-determine questions of weight or credibility. This court cannot say that the photograph of Deborah Terhune is violative of the Fourteenth Amendment of the Constitution of the United States that resulted in a fundamentally unfair trial. It is also important to note that the Supreme Court in *Estelle v. McGuire,* 502 U.S. 62, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991), explained this very succinctly that "[I]nquiries into decisions based on state law, such as an evidentiary ruling are not a part of a federal court's habeas review of a state conviction." *Id.*

The petitioner launches an attack on the effectiveness of both trial counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and appellate counsel under *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). The Sixth Amendment of the United States Constitution has been interpreted by the Supreme Court to guarantee to every criminal defendant the right to effective assistance of counsel. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Sixth Amendment is effectuated through the prism of a two-part test enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The petitioner asserts several violations of his Sixth Amendment right to the effective assistance of counsel. On this issue, this court notes that in *United States v. Grizales,* 859 F.2d 442 (7th Cir.1988), Judge Eschbach, speaking for the court stated:

> The Supreme Court has instructed that in evaluating the performance of a trial attorney we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2054. Appellant "has a heavy burden in proving a claim of ineffectiveness of counsel." *Jarrett v. United States,* 822 F.2d 1438, 1441 (7th Cir.1987) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064). The Supreme Court has further cautioned appellate courts to resist the temptation to "second-guess" the actions of

trial counsel after conviction. *Id.* It is clear that the performance of trial counsel should not be deemed constitutionally deficient merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Kennedy,* 797 F.2d 540, 543 (7th Cir.1986).

*See also Hockett v. Duckworth,* 999 F.2d 1160 (7th Cir.1993), *Biggerstaff v. Clark,* 999 F.2d 1153 (1993), *Fagan v. Washington,* 942 F.2d 1155 (7th Cir.1991), *D.S.A. v. Circuit Court Branch 1,* 942 F.2d 1143 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1196, 117 L.Ed.2d 436 (1992), *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128 (7th Cir.1990), *Page v. United States,* 884 F.2d 300 (7th Cir.1989), *United States v. Adamo,* 882 F.2d 1218 (7th Cir.1989), *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011 (7th Cir.1988), *Buelow v. Dickey,* 847 F.2d 420 (7th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989), *United States v. Queen,* 847 F.2d 346 (7th Cir.1988), *United States v. Gerrity,* 804 F.2d 1330 (7th Cir.1986), and *United States v. Liefer,* 778 F.2d 1236 (7th Cir.1985). *But see Clark v. Duckworth,* 770 F.Supp. 1316 (N.D.Ind.1991). *See also United States v. Ray,* 828 F.2d 399 (7th Cir.1987), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988).

In light of these cases, the specific test in an ineffective assistance of counsel claim mandates a two part evaluation. A petitioner must illustrate that counsel's performance fell below an objective standard of reasonableness. First, a petitioner must specify the particular acts or omissions precipitating the respective claim. To evaluate the performance, the *Strickland* court explained that a court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. After specifying the particular acts or omissions, a petitioner must then explain how counsel's failure to meet a reasonableness standard of performance caused actual prejudice to the petitioner's case. *See*

*Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987). In demonstrating the requisite prejudice, a petitioner must illustrate that there is a reasonable probability that the result of the proceeding would have been different without the alleged unprofessional error of counsel. If petitioner can not make this showing, the court need not determine whether the attorney's performance was in fact deficient. *See United States v. Slaughter,* 900 F.2d 1119, 1124–25 (7th Cir.1990).

■ The petitioner advances several claims under the auspices of the Sixth Amendment. Those same claims were discussed by the Court of Appeals of Indiana in the review of the petitioner's state post-conviction proceedings. It is important to note that state court factual findings made in the course of deciding various constitutional issues are subject to the presumption of correctness standard of 28 U.S.C. § 2254(d), which provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... shall be presumed to be correct" unless "the merits of the factual dispute were not resolved in the state court hearing." *Galowski v. Murphy,* 891 F.2d 629, 635 (7th Cir.1989), *cert. denied,* 495 U.S. 921, 110 S.Ct. 1953, 109 L.Ed.2d 315 (1990). Therefore, under section 2254(d), the court must defer to the state court's findings regarding the underlying facts of who did what to whom, when, where, and why. *Weidner v. Thieret,* 866 F.2d 958, 961 (7th Cir.1989). *See also Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

■ This court notes that a state court's conclusion that counsel performed adequately and that any shortcomings in his representation did not prejudice the defendant's case are not findings of fact under section 2254(d), but are instead mixed questions of law and fact subject to independent review. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Balfour v. Haws,* 892 F.2d 556, 563 (7th Cir.1989). Therefore, this court relies on the Court of Appeals of Indiana for the requisite facts on this issue, however, this court must make an independent examination of the state court record in order to determine whether counsel rendered effective assistance.

■ First, the petitioner "argues that trial counsel should have objected to the admission of a taped conversation [insofar] as the petitioner had invoked his right to counsel and the police used Billiott, a police agent, to violate his right to counsel by eliciting inculpatory statements." *See Appendix "A".* The facts, requisite to this issue, as found by the Court of Appeals of Indiana, are as follows:

> [On the day following the murder,] Billiott called an Anderson police officer for whom he has worked as a confidential informant and told him that he had witnessed a murder in Indianapolis. Billiott and Koomler told the police where they could find the gun.

> [The petitioner] was arrested but refused to give a statement to the police until after he spoke to an attorney. After [the petitioner's] arrest, [the petitioner] told Billiott to telephone Lana Rogers. Koomler and Billiott notified Officer Jones about the upcoming phone calls and consented to having them taped. [The petitioner] and Billiott called Rogers at the same time and Rogers relayed to Billiott [the petitioner's] demand that Billiott change his story and testify that Terhune had shot herself.

*Id.*

In evaluating this claim, this court notes that in *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Supreme Court examined whether certain statements made by a defendant were garnered in violation of his right to counsel. After his arraignment, the defendant was placed in a cell with a prisoner named Benny Lee. "Unknown to [the defendant], Lee had agreed to act as a police informant." *Id.* "[The defendant] made incriminating statements that Lee reported to the police." *Id.* In reviewing this issue, the *Kuhlmann* Court further explained:

> Before respondent arrived in the jail, Lee had entered into an arrangement with De-

tective Cullen, according to which Lee agreed to listen to respondent's conversations and report his remarks to Cullen. Since the police had positive evidence of respondent's participation, the purpose of placing Lee in the cell was to determine the identities of respondent's confederates. Cullen instructed Lee not to ask respondent any questions, but simply to "keep his ears open" for the names of the other perpetrators. Respondent first spoke to Lee about the crimes after he looked out the cellblock window at the Star Taxicab Garage, where the crimes had occurred. Respondent said, "someone's messing with me," and began talking to Lee about the robbery, narrating the same story that he had given the police at the time of his arrest. Lee advised respondent that this explanation "didn't sound too good," but respondent did not alter his story. Over the next few days, however, respondent changed details of his original account. Respondent then received a visit from his brother, who mentioned that members of his family were upset because they believed that respondent had murdered the dispatcher. After the visit, respondent again described the crimes to Lee. Respondent now admitted that he and two other men, whom he never identified, had planned and carried out the robbery, and had murdered the dispatcher. Lee informed Cullen of respondent's statements and furnished Cullen with notes that he had written surreptitiously while sharing the cell with respondent.

*Id.*

Initially, the *Kuhlmann* Court explained that *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), stands for the proposition that "once a defendant's Sixth Amendment right to counsel has attached, he is denied that right when federal agents 'deliberately elicit' incriminating statements from him in the absence of his lawyer." *Id.* The *Kuhlmann* Court indicated that the decision in *Massiah* makes it clear that "it was concerned with interrogation or investigative techniques that were equivalent to interrogation." *Id.* In evaluating this issue, the Court revisited *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183,

65 L.Ed.2d 115 (1980), and *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) in order to determine whether the abovementioned facts violated the Sixth Amendment right to counsel:

In *United States v. Henry,* the Court applied the Massiah test to incriminating statements made to a jailhouse informant. The Court of Appeals in that case found a violation of Massiah because the informant had engaged the defendant in conversations and "had developed a relationship of trust and confidence with [the defendant] such that [the defendant] revealed incriminating information." 447 U.S., at 269 [100 S.Ct. at 2186.] This Court affirmed, holding that the Court of Appeals reasonably concluded that the Government informant "deliberately used his position to secure incriminating information from [the defendant] when counsel was not present." *Id.,* at 270 [100 S.Ct. at 2187.] Although the informant had not questioned the defendant, the informant had "stimulated" conversations with the defendant in order to "elicit" incriminating information. *Id.,* at 273 [100 S.Ct. at 2188;] see id., at 271, n. 9 [100 S.Ct. at 2187, n. 9.] The Court emphasized that those facts, like the facts of Massiah, amounted to " 'indirect and surreptitious [interrogation]' " of the defendant. 447 U.S., at 273 [100 S.Ct. at 2188.]

Earlier this Term, we applied the Massiah standard in a case involving incriminating statements made under circumstances substantially similar to the facts of Massiah itself. In *Maine v. Moulton,* 474 U.S. 159 [106 S.Ct. 477, 88 L.Ed.2d 481] (1985), the defendant made incriminating statements in a meeting with his accomplice, who had agreed to cooperate with the police. During that meeting, the accomplice, who wore a wire transmitter to record the conversation, discussed with the defendant the charges pending against him, repeatedly asked the defendant to remind him of the details of the crime, and encouraged the defendant to describe his plan for killing witnesses. *Id.,* at 165–166, and n. 4 [106 S.Ct., at 481, and n. 4.] The Court concluded that these investigatory techniques denied the defendant his right to

counsel on the pending charges. Significantly, the Court emphasized that, because of the relationship between the defendant and the informant, the informant's engaging the defendant "in active conversation about their upcoming trial was certain to elicit" incriminating statements from the defendant. *Id.*, at 177, n. 13 [106 S.Ct., at 487, n. 13.] Thus, the informant's participation "in this conversation was 'the functional equivalent of interrogation.'" Ibid. (quoting *United States v. Henry*, 447 U.S., at 277 [100 S.Ct., at 2190] (Powell, J., concurring)).

As our recent examination of this Sixth Amendment issue in Moulton makes clear, the primary concern of the Massiah line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation. Since "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached," 474 U.S., at 176 [106 S.Ct., at 487,] citing *United States v. Henry, supra,* [447 U.S.,] at 276 [100 S.Ct., at 2189–90.] (Powell, J., concurring), a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

*Id.* Here, it is clear that the petitioner delivered the abovementioned information voluntarily and there was no design deliberately crafted through any law enforcement officers to elicit incriminating remarks.

■ Next, the petitioner contends that "trial counsel was ineffective because he failed to object to evidence of uncharged crimes." *See Appendix "A"*. On this issue, this court notes that "Billiott testified that he was at [the petitioner's] house at the time of the murder, in order to purchase Desoxyn, which had been obtained by using a forged prescription." *Id.* In addition, "Billiott also stated that he had purchased drugs from him

several times." *Id.* The Attorney General argues that "[t]here is no basis for concluding that the outcome of the trial was affected by evidence that a witness was at [the petitioner's] house to buy a drug in light of the very strong evidence of [the petitioner's] guilt." *See Respondent's Return.*

■ The contested evidentiary objection is similar to Federal Rule of Evidence 404(b). *It is a difficult task to evaluate this issue under the first part of the Strickland test* insofar as "[r]ule 404(b) has engendered a tremendous amount of litigation and has inspired more judicial opinions, and arguably more confusion, than any other section of the [Federal Rules of Evidence.]" *Edward Becker & Aviva Orenstein, The Federal Rules of Evidence after Sixteen Years,* 142 F.R.D. 519 (1992). This court notes that this counsel's performance must be evaluated in light of the totality of the circumstances of the case. *United States v. Adamo,* 882 F.2d 1218, 1228 (7th Cir.1989). More importantly, there is a strong presumption that counsel rendered reasonably effective assistance of counsel, and the petitioner must effectively refute the presumption. *Pittman v. Warden, Pontiac Correctional Center,* 960 F.2d 688 (7th Cir.1992); *Montgomery v. Petersen,* 846 F.2d 407 (7th Cir.1988). The first part of the *Strickland* test requires the petitioner to illustrate that trial counsel's representation fell below an objective standard of reasonableness. *Montgomery v. Petersen,* 846 F.2d 407 (7th Cir.1988). Trial counsel's performance will not be deemed constitutionally deficient "merely because of a tactical decision made at trial that in hindsight appears not to have been the wisest choice." *United States v. Grizales,* 859 F.2d 442, 447 (7th Cir.1988). *See also Drake v. Clark,* 14 F.3d 351 (7th Cir.1994). Although it may be possible to make a compelling argument with the first part of the *Strickland* test on this issue, this court finds no prejudice to the petitioner under the second part of the *Strickland* test.

In order to assert a viable Sixth Amendment claim, not only must the petitioner satisfy the first part of the *Strickland* test, the petitioner must also illustrate how the error prejudiced the result of the trial. This

is a difficult task. Recently, the Supreme Court restructured the second part of the *Strickland* test in *Lockhart v. Fretwell,* — U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993):

> Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Id.* —— U.S. at ——, 113 S.Ct. at 842–43. In reevaluating the analysis under the *Strickland* test, the Court posited a slightly more restrictive test:

> It focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.

*Id.* —— U.S. at ——, 113 S.Ct. at 844.

On the issue of prejudice, the Attorney General points out that "there was overwhelming evidence of [the petitioner's] guilt, including the testimony of several witnesses and the presence of handcuffs in his house." *See Respondent's Return.* In addition, this court notes the evidence catalogued by the Indiana Supreme Court and Court of Appeals of Indiana on this issue.

The Attorney General's arguments on this issue are furnished for purposes of the second part of the *Strickland* test. This court finds this argument convincing. The addition of the refinement added in *Fretwell* is even more detrimental to the petitioner. Therefore, this court finds no constitutional error on this claim. *See also Durrive v. United States,* 4 F.3d 548 (7th Cir.1993).

Next, the petitioner alleges "that trial counsel was ineffective due to the following conflicts of interest: (1) State's witness Billiott was also represented by a public defender; (2) counsel was seeking employment as a deputy prosecutor; (3) counsel was hired as a deputy public defender by the trial judge." *See Appendix "A".*

In *Stoia v. United States,* 22 F.3d 766 (7th Cir.1994), the Seventh Circuit, speaking through Judge Kanne, discussed the Sixth Amendment ramifications presented by a conflict of interest:

> "It is well settled that '[a] criminal defendant is entitled to counsel whose undivided loyalties lie with the client.'" *United States v. Barnes,* 909 F.2d 1059, 1065 (7th Cir.1990) (quoting *United States v. Ellison,* 798 F.2d 1102, 1106 (7th Cir.1986), cert. denied, 479 U.S. 1038, 93 L.Ed.2d 845, 107 S.Ct. 893 (1987)). See also *United States v. Noble,* 754 F.2d 1324, 1333 (7th Cir.), cert. denied, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985); *United States ex rel. Williams v. Franzen,* 687 F.2d 944, 948 (7th Cir.1982)). Thus, a defendant may premise an ineffective assistance of counsel claim on his attorney's conflict of interest. *Id.* (citations omitted). The typical conflict of interest case arises when one attorney represents two or more defendants in the same criminal proceeding. *Id.* (quoting *Ellison,* 798 F.2d at 1106–1107). However, a conflict of interest may also arise when an attorney and his client have divergent interests. *Id.*

A defendant, who has not provided the trial court with notice of his attorney's conflict of interest, may show that he was denied effective assistance of counsel in two different ways. He may proceed under *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), and its progeny, by showing both that (1) his attorney had a potential conflict of interest and (2) the potential conflict prejudiced his defense. *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993), cert. denied, [—— U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79] (1994). Or he may proceed under *Cuyler v. Sullivan,* 446 U.S. 335, 64 L.Ed.2d 333, 100 S.Ct. 1708 (1980), by showing that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348 [100 S.Ct. at 1718.]

*Cuyler* requires a showing of both "an actual conflict of interest" and an adverse effect on the lawyer's performance. See *Cerro* [*v. U.S.,*] 872 F.2d [780,] at 785–786.

If the defendant can satisfy both prongs of the Cuyler test, then "prejudice is presumed." *Strickland,* 466 U.S. at 692 [104 S.Ct. at 2067.] Moreover, "legal representation which is adversely affected by actual conflicts of interest is never considered harmless error." *United States v. Tatum,* 943 F.2d 370, 375 (4th Cir.1991). See also *United States v. Swartz,* 975 F.2d 1042, 1048 (4th Cir.1992) (citing *Glasser v. United States,* 315 U.S. 60, 76, 86 L.Ed. 680, 62 S.Ct. 457 [467–68] (1942)).

An actual conflict of interest results if "'the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests.'" *United States v. Ziegenhagen,* 890 F.2d 937, 939 (7th Cir.1989) (quoting *United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir.1988)). An "adverse effect" occurs when an attorney's actual conflict of interest causes a "'lapse in representation contrary to the defendant's interests....'" *Wilson v. Mintzes,* 761 F.2d 275, 286 (6th Cir.1985) (quoting *Sullivan v. Cuyler,* 723 F.2d 1077, 1086 (3d Cir.1983)). *Id.*

■ This court notes that the Court of Appeals of Indiana explained that "[the petitioner] does not even allege that the two public defenders ever discussed Billiott's case and his case." *See Appendix "A".* On this issue, the Court of Appeals of Indiana held "[the petitioner] does not show or even allege any actual conflict that arose from both men being represented by public defenders." *Id.* Finally, and perhaps most importantly, the Court of Appeals explained "[t]his is an untenable position because if we were to accept this argument it would mean that co-defendants could never be represented by public defenders in the same office even if there was no actual conflict." *Id.*

■ On the issue of whether conflict existed insofar as "trial counsel was seeking employment with the prosecutor's office when he was representing [the petitioner], [the Court of Appeals] indicated that "[e]ven if this were true, [the petitioner] has not presented any evidence of actual conflict." *Id.* The Court of Appeals explained that "[t]rial counsel worked for the prosecutor's office from 1975 to 1978 and he again started working for the prosecutor's office in 1982[;

however, h]e represented [the petitioner] in 1981, but stated that he did not seek employment with the prosecutor until after he had represented [the petitioner]." *Id.*

■ Finally, on the issue of conflict presented by the appointment of a public defender by the trial judge, this court without question agrees with the Court of Appeals. "The mere fact that the trial judge hired the attorney to be a public defender does not mean that counsel is inherently incapable of effective representation." *Id.*

The petitioner alleges several other basis for a Sixth Amendment claim. The petitioner argues that "trial counsel was ineffective for failing to object to the admission of evidence which was the fruit of a warrantless search." *Id.* On this issue at the state trial, "Officer Rodney Jones and Officer Michael Smilko confiscated a gun, handcuffs and ammunition from [the petitioner's] residence." *Id.* More importantly, "Officer Jones testified that [the petitioner] voluntarily consented to Jones' request to search his house for weapons and clues to the shooting." *Id.* These facts are dispositive on this issue. This court also notes that in order to effectuate this claim, this petitioner confronts the mandate of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■ The petitioner "argues that trial counsel was ineffective for failing to tender final instructions on informer witnesses and hearsay evidence." *See Appendix "A".* On this issue, the Court of Appeals indicated that "[the petitioner] has waived the issues regarding ineffectiveness of trial counsel for failure to tender a hearsay instruction and for failure to request the court to reread the preliminary instructions as final instructions." *Id.* Therefore, this court finds that the petitioner has procedurally defaulted on this issue. On this issue, in *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Court explained that a "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* (internal quotation omitted). The rule in *Harris v. Reed, supra,* was altered by the Supreme Court in

*Coleman v. Thompson,* 501 U.S. 722, —— ——, 111 S.Ct. 2546, 2552–54, 115 L.Ed.2d 640 (1991). On this issue, the *Coleman* Court indicated that "[i]n habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, *and* did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." *Id.* In addition, the *Coleman* Court explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns for comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.*

■■■ The petitioner argues trial counsel failed to adequately investigate and failed to consult with the petitioner. In order to effectuate this claim, the petitioner must provide "a comprehensive showing as to what the investigation would have produced." *United States ex rel. Cross v. DeRobertis,* 811 F.2d 1008 (7th Cir.1987). In addition, the petitioner contends that trial counsel was ineffective because he failed to allow the petitioner to testify at the trial. This court finds no Sixth Amendment claim insofar as there is no information indicating how this action would have produced a different result. *United States ex rel. Partee v. Lane,* 926 F.2d 694 (7th Cir.1991).

The petitioner also asserts that his Sixth Amendment right to effective assistance of appellate counsel has been violated. In *Gray v. Greer,* 800 F.2d 644 (7th Cir.1985), the Seventh Circuit, speaking through Judge Flaum, outlined the parameters for the consideration of the aforementioned claim:

> The *Strickland* standard envisions a two-prong analysis. First, counsel's performance must have been deficient, and second, the deficiency must have prejudiced

the defense. *Id.* Has appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance. If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial. Were it legitimate to dismiss a claim of ineffective assistance of counsel on appeal solely because we found it improper to review appellate counsel's choice of issues, the right to effective assistance of counsel would be worthless. When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Id.* at 646. This court finds no basis for any Sixth Amendment violation on this contention.

There is no basis for relief under 28 U.S.C. § 2254 shown here, and such petition is now **DENIED. IT IS SO ORDERED.**

### APPENDIX

### IN THE
### COURT OF APPEALS OF INDIANA
### FOURTH DISTRICT

No. 49A04–9101–PC–3

Filed July 22, 1991

Randy B. Spinks, Appellant
(Petitioner Below),

vs.

State of Indiana, Appellee
(Respondent Below).

### APPEAL FROM THE MARION
### SUPERIOR COURT
Criminal Division One
The Honorable John W. Tranberg, Judge.
Cause No. CR80–448A

*MEMORANDUM DECISION*

MILLER, J.

A jury convicted Randy B. Spinks (age 29)

of murder,[1] for which he received a 45 year prison sentence. Spinks' conviction was affirmed on direct appeal. He now appeals the denial of his Petition for Post–Conviction Relief arguing that both his trial and appellate attorneys provided ineffective assistance of counsel.

## FACTS

The facts most favorable to the verdict reveal that early in the morning on November 17, 1980, Randy Spinks, Leander Billiott, Karen Koomler, Michelle Shift, Debbie Terhune and Jessica Winters were partying at the home which Spinks and Winters shared. Spinks intervened in a fight between Winters and Terhune by kicking Terhune in the face. When Terhune tried to leave, Spinks grabbed her, beat her, forcibly took her into a bedroom and then handcuffed her. Terhune tried to get loose and Spinks threatened to shoot her. He then got a gun from the living room, returned to the bedroom and shot her. She died from complications resulting from the gunshot on December 11, 1980.

On the day of the shooting, Spinks told Billiott to dispose of the gun. Billiott and Koomler threw the gun in a field. Winters called the police. When they arrived Spinks gave Officer Rodney Jones permission to search for a weapon and clues to the shooting. The officers found the handcuffs during their search.

The next day Billiott called an Anderson police officer for whom he had worked as a confidential informant and told him that he had witnessed a murder in Indianapolis. Billiott and Koomler told the police where they could find the gun.

Spinks was arrested but refused to give a statement to the police until after he spoke to an attorney. After Spinks' arrest, Spinks told Billiott to telephone Lana Rogers. Koomler and Billiott notified Officer Jones about the upcoming phone calls and consented to having them taped. Spinks and Billiott called Rogers at the same time and Rogers relayed to Billiott Spinks' demand that Bil-

liott change his story and testify that Terhune had shot herself.

## DECISION

Spinks raises several issues regarding the alleged ineffectiveness of both his trial and appellate counsels. We first note the general rule that, when a defendant is represented by different counsel on appeal and at trial, ineffectiveness of trial counsel must be raised on appeal or the issue is waived. *Smith v. State* (1990), Ind.App., 559 N.E.2d 338. In the instant case, Spinks was represented by counsel who was not the same as his appellate counsel. Even if the issue has not been waived, trial counsel was not ineffective.

We begin by noting that in post-conviction proceedings, the petitioner bears the burden of proving his claim by a preponderance of the evidence. *Wallace v. State* (1990), Ind., 553 N.E.2d 456. The post-conviction relief court is the sole judge of the weight of the evidence and the credibility of the witnesses. His decision will be reversed only where the evidence is without conflict and leads unerringly to the contrary conclusion. *Grey v. State* (1990), Ind., 553 N.E.2d 1196.

Our supreme court has stated the standards for reviewing a claim of ineffective assistance of counsel as follows (the first sentence adopts the two-part test set out in *Strickland v. Washington* (1984), 466 U.S. 668):

"Reversal for ineffective assistance of counsel is appropriate in cases where a defendant shows both (a) that counsel's performance fell below an objective standard of reasonableness, and (b) that the deficient performance so prejudiced defendant as to deprive him of a fair trial. A claim of ineffective assistance must identify the claimed errors of counsel, so that the court may determine whether, in light of all circumstances, the counsel's actions were outside the range of professionally competent assistance. The proper measure of attorney performance is reasonableness under prevailing professional norms. It shall be strongly presumed that counsel rendered adequate assistance and

[1]. Ind.Code 35–42–1–1.

made all significant decisions in the exercise of reasonable professional judgment. Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortion of hindsight. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel. If deficient performance of counsel can be proven, defendant must further show a reasonable probability that it altered the outcome of the case."

*Mftari v. State* (1989), Ind., 537 N.E.2d 469, 473–74.

## ISSUE I—INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### a. Failure to object to taped statements on proper basis

Spinks argues that trial counsel should have objected to the admission of the taped conversations because he had invoked his right to counsel and the police used Billiott, a police agent, to violate his right to counsel by eliciting inculpatory statements. We disagree.

Cases which have found violation of the right to counsel by having police agents elicit inculpatory statements from defendants involve informants, who in exchange for money or favorable treatment, surreptitiously elicit inculpatory statements from a defendant after the defendant has asserted his right to counsel. *See, e.g. United States v. Henry* (1980), 447 U.S. 264, 100 S.Ct. 2183, 447 L.Ed.2d 115; *Iddings v. State* (1981), Ind. App., 427 N.E.2d 10. The instant case is distinguishable because the inculpatory statements were not obtained directly from defendant-Spinks, but rather through a third person, Rogers. Moreover, Billiott was not a police agent during these conversations. Unlike *Henry* and *Iddings,* there is no evidence that Billiott was paid for eliciting the statements or given favorable treatment for the charges of assisting a criminal which were pending against him. Billiott was only given use immunity in exchange for his testimony, but he could still be tried for assisting a criminal.

In order to establish ineffective assistance of counsel for failure to object, it must be shown that the trial court would have been required to sustain the objection had it been made. *Hill v. State* (1982), Ind., 442 N.E.2d 1049. Because we find that taping the conversations did not violate Spinks' right to counsel, the court would not have been required to sustain the objection had it been made. Therefore, trial counsel was not ineffective for failing to object on the basis of violation of Spinks' right to counsel.

### b. Failure of counsel to object to evidence of other uncharged crimes

Spinks contends that trial counsel was ineffective because he failed to object to evidence of uncharged crimes. We disagree.

Spinks is correct in his assertion that evidence of uncharged crimes is generally inadmissible. *Penley v. State* (1987), Ind., 506 N.E.2d 806. However, this does not necessarily mean that counsel's failure to object to evidence of uncharged crimes constitutes ineffective assistance of counsel. In order to constitute ineffective assistance of counsel, not only must counsel's actions be outside the range of professionally competent assistance, but also the defendant must be prejudiced by counsel's actions to the extent that there is a reasonable probability that the conduct altered the outcome of the case. *Mftari, supra.*

Here, Billiott testified that he was at Spinks' house at the time of the murder, in order to purchase Desoxyn which had been obtained by using a forged prescription. Billiott also stated that he had purchased drugs from him several times. In the instant case there was overwhelming evidence of Spinks' guilt, including the testimony of several witnesses and the presence of the handcuffs in his house. Therefore, the fact that Billiott testified that he had purchased drugs from Spinks several times would not have prejudiced Spinks to the extent of altering the outcome of the case. *Id.* Accordingly, counsel was not ineffective for failing to object to testimony about Spinks' involvement with drugs.

### c. Failure to object to the admission of evidence seized during search

Spinks argues that trial counsel was ineffective for failing to object to the admission

of evidence which was the fruit of a warrantless search. We disagree.

Generally, a search warrant is required in order for a search and seizure to be constitutionally proper; however, a valid consent to search replaces the warrant requirement. *Morgan v. State* (1989), Ind., 544 N.E.2d 143. Here, Officer Rodney Jones and Officer Michael Smilko confiscated a gun, handcuffs and ammunition from Spinks' residence. Officer Jones testified that Spinks voluntarily consented to Jones' request to search his house for weapons and clues to the shooting. Therefore, trial counsel was not ineffective for failing to object to the admission of the fruits of the search because the court would not have been required to sustain the objection. *Hill, supra.*

### d. Alleged ineffectiveness regarding instructions

Spinks argues that trial counsel was ineffective for failing to tender final instructions on informer witnesses and hearsay evidence. He also contends that trial counsel was ineffective for not objecting on the basis that the court did not reread the preliminary instructions as final instructions. We disagree with Spinks on all of the allegations of ineffectiveness of counsel regarding instructions.

Generally, a defendant is not entitled to a specific instruction on informer witnesses. *See Harden v. State* (1982), Ind., 441 N.E.2d 215. Such an instruction would comment on the competency of or the weight to be given to the testimony of particular witnesses, thereby invading the province of the jury. *Ingram v. State* (1989), 547 N.E.2d 823. In the instant case, an instruction on informer witnesses would have been impermissibly commenting on the weight to be given the testimony of a few of the witnesses. Moreover, the court did give general instructions on the credibility of witnesses. Therefore, trial counsel was not ineffective for failing to request an instruction on informer witnesses.

Spinks argues that trial counsel was ineffective for failing to request an instruction on hearsay evidence, however, he does not argue why such an instruction should be given in this case. Furthermore, he does not cite any authority which states that such an instruction would be proper. Similarly, Spinks states that trial counsel was ineffective for not requesting that the court reread the preliminary instructions as final instructions, however, he does not present argument or authority in support of this issue either.

Each issue appellant raises must be specifically set forth, followed by applicable argument and supported by authority. Ind.Appellate Rule 8.3(A)7. An issue is waived for appellate review if supporting authority is not cited or if cogent argument is not presented. *Wickliffe v. State* (1988), Ind., 523 N.E.2d 1385. Therefore, Spinks has waived the issues regarding ineffectiveness of trial counsel for failure to tender a hearsay instruction and for failure to request the court to reread the preliminary instructions as final instructions.

### e. Allegations of ineffectiveness of trial counsel for conflicts of interest

Spinks next claims that trial counsel was ineffective due to the following conflicts of interest: (1) State's witness Billiott was also represented by a public defender; (2) counsel was seeking employment as a deputy prosecutor; and (3) counsel was hired as a deputy public defender by the trial judge. We disagree with these contentions.

Our supreme court has stated that "the mere possibility of a conflict of interest is insufficient to justify reversal." *Williams v. State* (1988), Ind., 525 N.E.2d 1238, 1240. To establish a conflict of interest severe enough to violate a defendant's right to counsel, a defendant "must show that counsel actively represented conflicting interests which adversely affected his performance." *Id.*

Spinks argues that the mere fact that another public defender from the same office represented Billiott created a conflict of interest which violated his right to counsel. This is an untenable position because if we were to accept this argument it would mean that co-defendants could never be represented by public defenders in the same office even if there were no actual conflict. That might effectively deny one of the defendants access to counsel.

In *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 681, our supreme court, in addressing the same issue, stated that "any defendant asserting conflict of interest on the part of his attorney due to the attorney's duty to a co-defendant must show that the conflict of interest was actual and not just theoretical, and that it actually affected his lawyer's performance." Spinks does not even allege that the two public defenders ever discussed Billiott's case and his case. He does not show or even allege any actual conflict that arose from both men being represented by public defenders. Therefore, counsel was not ineffective due to conflicts in interest resulting from the fact that someone in his office represented Billiott while he represented Spinks. *Id.*

Spinks alleges that a conflict existed because his trial counsel was seeking employment with the prosecutor's office when he was representing Spinks. Even if this were true, Spinks has not presented any evidence of actual conflict. *Id.* Trial counsel worked for the prosecutor's office from 1975 to 1978 and he again started working for the prosecutor's office in 1982. He represented Spinks in 1981, but stated that he did not seek employment with the prosecutor until after he had represented Spinks. Furthermore, Spinks has not met his burden of proof by merely speculating that trial counsel was seeking employment, at the time he represented Spinks, with the prosecutor's office because counsel starting working for the prosecutor a few months after he represented Spinks. *See Wallace, supra.* Spinks presents no evidence that trial counsel's association with the prosecutor's office before and after he represented Spinks caused any actual conflict.

Spinks next claims that there was a conflict of interest merely because the trial judge was the person who hired trial counsel to be a public defender. In *Sims v. State* (1989), Ind.App., 547 N.E.2d 895, we addressed this same issue. In *Sims*, we held that the mere fact that the trial judge hired the attorney to be a public defender does not mean that counsel is inherently incapable of effective representation. Unless a defendant can prove otherwise we presume that the judge maintained his neutrality and the attorney carried out his adversarial role. *Id.* Here, Spinks has not presented any evidence that his attorney was influenced by the judge in a manner which affected Spinks' representation. Therefore, trial counsel was not ineffective for having been hired by the trial judge.

*f. Failure of trial counsel to adequately investigate, failure to consult and failure to allow Spinks to testify*

Spinks does not argue how trial counsel's investigation was inadequate. His mere assertion that counsel's investigation was inadequate is not cogent argument. Therefore, this claim of ineffectiveness of trial counsel is waived. *See Wickliffe, supra.*

Spinks argues that counsel was ineffective because he only met with Spinks twice before trial. Minimal consultation in and of itself does not establish ineffective assistance of counsel. *Fitch v. State* (1981), Ind.App., 428 N.E.2d 1374. In *Fitch*, we held that the fact that counsel's consultation with defendant on the morning of trial was brief did not constitute ineffective assistance of counsel because the defendant failed to show that "the consultation was so perfunctory that evidence capable of changing the result was not presented." *Id.* at 1377. Here, Spinks does not point to any evidence that was not presented that was capable of changing the result.

Finally, he claims that trial counsel was ineffective for not allowing him to testify. We will not second guess counsel regarding trial tactics. In *Morris v. State* (1980), 274 Ind. 161, 165–66, 409 N.E.2d 608, 611–12, our supreme court stated:

> "Deliberate choices made by counsel for some contemplated tactical or strategic reason do not establish ineffective representation even though such choice may be subject to some criticism or may turn out to be detrimental to the client's cause."

Here, trial counsel made a contemplated tactical decision to recommend that Spinks not testify. Counsel stated that he felt Spinks' testimony could potentially do more harm than good. Based on this recommendation, Spinks decided not to testify. We

will not second guess a strategic decision such as this. *Morris, supra.*

For the foregoing reasons, we find that Spinks failed to prove that his trial counsel was ineffective.

### ISSUE II—INEFFECTIVENESS OF APPELLATE COUNSEL

We begin by noting that the standard for determining the competency of counsel is the same for both trial and appellate counsel. *Heyward v. State* (1988), Ind.App., 524 N.E.2d 15. There is a strong presumption that counsel was competent. *Id.*

*a. Failure to provide a complete record*

Spinks alleges that appellate counsel was ineffective for failing to present a complete record to our supreme court on his direct appeal. The appellate record did not include exhibits 17, 18 and 19 which were played to the jury at trial. Those exhibits were the taped pretrial statements of Jessica Winters and Spinks; and the taped phone calls between Koomler and Rogers and between Billiott and Rogers. Spinks argues the tapes were necessary in order for our supreme court to review the question of sufficiency of the evidence.

We agree that the tapes should have been included in the record. However, Spinks has not established prejudice. Koomler, Billiott and Rogers testified, at length, about the contents of the telephone conversations. This testimony was included in the record. More importantly, from the evidence favorable to the verdict which was before our supreme court, there was substantial evidence of probative value which would allow a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt. *See Taylor v. State* (1987), Ind., 514 N.E.2d 290. Therefore, appellate counsel was not ineffective for failing to include a complete record for appellate review.

*b. Failure of appellate counsel to raise ineffectiveness of trial counsel*

Spinks contends that appellate counsel was ineffective for failing to raise the issue of effectiveness of trial counsel on appeal. We disagree.

Failure to raise meritless claims does not constitute ineffectiveness of counsel. *Vaughn v. State* (1990), Ind., 559 N.E.2d 610. We found above that trial counsel was not ineffective; therefore, the issue of trial counsel ineffectiveness is without merit. Accordingly, appellate counsel was not ineffective for failure to raise the issue of effectiveness of trial counsel.

For the foregoing reasons, we affirm.

CONOVER, J. and GARRARD, J. CONCURRING.